**Karl Eugene CHAMBERLAIN,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 72,850.**

Court of Criminal Appeals of Texas,
En Banc.

June 16, 1999.

on this case, I will not expend more time exploring this potentially viable theory.

232

Robert P. Abbott, Coppell, for appellant.

Karen R. Wise, Asst. District Atty., Dallas, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which McCORMICK, P.J., MANSFIELD, KELLER, PRICE, HOLLAND, JOHNSON and KEASLER, J.J. joined.

Appellant was convicted in May 1997 of capital murder committed in August 1991. TEX. PENAL CODE § 19.03; TEX. CODE CRIM.

1. Unless otherwise indicated, references to articles will be to the Texas Code of Criminal Procedure.

PROC. Art. 37.0711.[1] The jury's verdicts required the trial court to sentence appellant to death. Art. 37.0711 § 3(g). Appeal from the sentence of death is automatic to this Court. TEX. CONST. Art. I, § 5; Art. 37.0711 § 3(j). Appellant raises sixteen points of error. We affirm.

■ In his second point of error, appellant claims the evidence is legally insufficient to support the jury's finding that a probability exists that appellant will commit criminal acts of violence constituting a continuing threat to society. Art. 37.0711 § 3(b)(2). A brief account of the facts in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is necessary.

Appellant lived next door to the victim, a single mother, and her five-year-old son. On August 12, 1991, appellant observed the victim's brother leaving with the victim's son. Appellant went next door "to borrow a cup of sugar." Upon gaining entry to the victim's apartment, appellant bound her with duct tape and sexually assaulted her. Appellant then shot the victim in the forehead, killing her. The victim's semi-nude body was discovered on the bathroom floor some thirty-five minutes later by her brother and son upon their return to the apartment. Appellant walked his dogs after the murder.

Appellant's guilt was not uncovered until 1997. In the meantime, he confessed the murder to others, relating that he had gone to borrow a cup of sugar from his neighbor and that she had answered the door naked and seduced him. Appellant further elaborated that the victim had delighted in their sexual intercourse and explained that he had killed her in a panic only when she threatened to inform his wife of their sexual encounter.

While appellant says his non-violent past supports his contention that the evidence

is insufficient to show that he is a continuing threat to society, the evidence does not show a history of violence. The State introduced evidence that appellant had attacked a fellow soldier with a knife and a woman at a shopping mall with a stun gun. The State also introduced evidence that appellant broke into a pornography shop when, seeking pornography, he had found the shop closed.

In addition to this evidence of a violent past, the State introduced the testimony of Dr. Kenneth DeKleva, a psychiatrist. DeKleva asserted that the facts of the offense reveal a sexually sadistic, antisocial personality disorder. DeKleva noted that the crime scene revealed that the perpetrator needed to inflict humiliation, degradation and pain to achieve sexual gratification. DeKleva testified that leaving the victim uncovered and exposed evinced a lack of regard for her humanity and utter lack of remorse. Similarly, DeKleva testified that the fact that appellant walked his dogs after committing the offense also revealed a disturbing lack of remorse. The subsequent fantasies blaming the victim for seducing him, along with appellant's claims that she enjoyed the assault and then blaming her for the murder because she was going to tell his wife, were all, according to DeKleva, evidence of a dangerous personality disorder. DeKleva noted the evidence of appellant's overpowering sexual urges, i.e., that as a teenager he kept a mannequin with the crotch cut out, that he burglarized the pornography store when he found it closed and had stolen inflatable sex dolls. DeKleva testified that there is no known treatment for a sexually sadistic killer and no evidence that their fantasies eventually subside. DeKleva testified that these traits reveal a dangerous person, particularly when that person had already fulfilled some of his violent fantasies. DeKleva concluded the evidence established that appellant would probably commit criminal acts of violence constituting a continuing threat to society.

The evidence sufficiently supports the jury's verdict. *See, e.g., Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Crim.App.1987) (opinion on rehearing). Appellant's second point of error is overruled.

■ In his third point of error, appellant challenges the factual sufficiency of the evidence to establish that he presents a continuing threat to society. Article 37.0711 § 3(b)(2). We have repeatedly declined to apply the review announced in *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim. App.1996), to the future dangerousness special issue. *McGinn v. State,* 961 S.W.2d 161, 169 (Tex.Crim.App.1998). We overrule appellant's third point of error.

■ In his first point of error, appellant argues that the trial court erred in not permitting him to rebut the psychiatric testimony of Dr. DeKleva unless he first submitted to a psychiatric examination by the State's expert. According to appellant, the trial court's refusal to permit him to rebut the State's psychiatric testimony violated his fifth amendment right to remain silent, his sixth amendment right to counsel, and his right to due process of law under the United States Constitution.

The facts are undisputed. The trial court granted the State's pre-trial motion to order appellant to submit to psychiatric examination by the State if he intended to introduce psychiatric evidence based on an examination by a defense expert. At punishment Dr. DeKleva testified for the State based on the facts of the offense and facts related during appellant's trial but not on an examination of appellant. Outside the presence of the jury, defense counsel announced its intent to rebut DeKleva's testimony with that of Dr. J. Crowder who, unlike DeKleva, had the benefit of having interviewed and tested appellant for the purpose of testifying about his future dangerousness. The trial court refused to permit any testimony based on Crowder's testing and interview unless appellant submitted to like testing and inter-

views by DeKleva. Emphasizing that he offered Crowder's testimony merely as rebuttal evidence, appellant objected to the trial court's conditional exclusion of the evidence on grounds that it violated his right to counsel and his right against compulsory self-incrimination.

Appellant acknowledges that under *Lagrone v. State*, 942 S.W.2d 602 (Tex.Crim. App.1997) and *Soria v. State*, 933 S.W.2d 46 (Tex.Crim.App.1996), the trial court had the authority to exclude Crowder's testimony unless appellant conceded to psychiatric examination by the State, but only if he had *introduced* the psychiatric testimony first. Appellant argues that his case is factually distinguishable from *Lagrone* and *Soria* because in his case the State introduced psychiatric testimony first, and he merely offered Crowder's testimony in *rebuttal.*

The holdings of *Soria* and *Lagrone* are governed by the principle that if a defendant breaks his silence to speak to his own psychiatric expert and introduces that testimony which is based on such interview, he has constructively taken the stand and waived his fifth amendment right to refuse to submit to the State's psychiatric experts. The focus is the defendant's choice to break his silence. The issue is not whether appellant introduced psychiatric evidence or merely rebutted such evidence. The issue is whether the psychiatric testimony he intended to introduce was based on his own participation in the psychiatric testing and examination. Appellant intended to introduce psychiatric testimony based upon his participation in a psychiatric examination. This "constitute[s] a waiver of the defendant's fifth amendment privilege in the same manner as would the defendant's election to testify at trial." *Soria*, 933 S.W.2d at 54. Appellant cannot claim a fifth amendment privilege in refusing to submit to the State's psychiatric examinations and then introduce evidence gained through his participation in his own psychiatric examination. The essential principles at work in *Lagrone* and *Soria*

are waiver and parity; if a defendant testifies, even in mere rebuttal, the State may be allowed to cross-examine him. *Lagrone*, 942 S.W.2d at 611; *Soria*, 933 S.W.2d at 54. That appellant intended to introduce Crowder's testimony in rebuttal after the State had introduced DeKleva's testimony does not address, much less override, these waiver and parity principles. The trial court did not abuse its discretion in conditionally excluding Crowder's testimony. Appellant's first point of error is overruled.

■ In point of error four appellant argues that direct appeal to this court denies him due process, in violation of the fifth and fourteenth amendments to the federal constitution. In point of error five appellant avers he is being denied due course of law, in violation of Article 1, section 19 of the Texas Constitution. Appellant argues that he is being treated disparately because if his case were reviewed by a court of intermediate appeals, as are all non-death criminal cases, the intermediate court would be compelled to review the factual sufficiency of the evidence supporting the special issues.

Appellant's argument is flawed. It is not a lack of power or jurisdiction that prevents this Court from conducting a factual sufficiency review of the special issues. *See Clewis*, 922 S.W.2d at 129–131. It is the nature of the special issues, which are mixed questions of fact and moral responses to the evidence, which makes factual sufficiency reviews impossible. *See McGinn v. State*, 961 S.W.2d 161, 168 (Tex.Crim.App.1998). Such questions evade factual sufficiency reviews because the reviewer has no accurate means of weighing the jury's moral response to the evidence. *Id.* Thus, even if appeal were to the intermediate appellate courts, the special issues would elude factual sufficiency review. Appellant's fourth and fifth points of error are overruled.

■ Citing *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d

133 (1994), appellant argues in his sixth point of error that the trial court offended the federal constitution when it instructed the jury at punishment that it was not to consider "how long [appellant] may be required to serve a sentence that is imposed" as "such matters ... come within the exclusive jurisdiction of the Board of Pardons and Paroles."[2] Article 37.0711 § 3(b)(2). Acknowledging that our decision in *Smith v. State*, 898 S.W.2d 838 (Tex.Crim.App.1995)(plurality), is against him, appellant argues that *Simmons'* rationale compels instructing the jury on parole. Nothing in appellant's arguments is distinguishable from those rejected in *Smith* or its progeny. *See Broxton v. State*, 909 S.W.2d 912, 919 (Tex.Crim.App. 1995) (making *Smith* plurality a majority). Appellant's sixth point of error is overruled.

■ In point of error seven appellant complains the trial court erred in admitting into evidence State's Exhibit No. 90, which shows that a number of obscene calls were traced by Bell Atlantic to appellant's telephone at work. At trial appellant objected generally on hearsay grounds; on appeal he argues that the proper predicate was not laid for the admission of the records under the business records exception to hearsay. Tex. R.Crim. Evid. 802 and 803(6). The State responds that the general hearsay objection was not specific enough to preserve the arguments raised on appeal and that any error was harmless because the same information contained in the records was admitted through the un-objected to testimony of various witnesses.

■ It is well established that questions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection. *McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App.1992). In the case at bar, the information contained in State's Exhibit No. 90 was introduced without objection in the examination of the witness who produced the exhibit, Caroline Hogan of Bell Atlantic, and in the cross examination of appellant's former employer, Jeff Werner. Appellant's seventh point of error is overruled.

■ In point of error eight appellant claims the trial court erred in admitting evidence of his obscene phone calls because the State failed to "clearly prove" that he perpetrated the offenses. *Burks v. State*, 876 S.W.2d 877, 909 (Tex.Crim.App. 1994). Appellant correctly asserts that the admission of unadjudicated extraneous offenses is contingent upon clear proof that the offense was committed and that the defendant perpetrated the offense. Applying the "clear proof" standard on review, we evaluate the trial court's ruling solely to determine whether it was in that zone of reasonable disagreement. *Id.* We will not conduct a *de novo* review of the evidence so as to superimpose our own analysis of the evidence over an equally plausible interpretation of the trial court. *Id.* The evidence is sufficient to establish appellant's identity as perpetrator of the alleged offenses.

Caroline Hogan testified that after receiving complaints about obscene phone calls to two Pennsylvania establishments, Bell Atlantic traced a number of subsequent calls to a telephone extension registered to Meridian Computer, a telemarketing firm. Jeff Werner, owner of Meridian Computer, testified that each salesman's

---

**2.** Appellant's request for the following charge was denied:

When you decide whether the Defendant will continually commit violent crimes, you must consider the fact that if given a life sentence he will be sentenced to life in prison and will therefore not live among society in the free world. Thus, if you believe that the Defendant will not continually commit violent crimes in prison, you must answer Special Issue No. I "no", even if you believe there is a likelihood he would do so if he was a free man."

telephone was limited to an assigned geographical area. Werner testified that a computer system recorded each salesman's calls, so that supervisors could see from what extension a call was made, what time it was made, the number dialed and the length of the call. When Werner was informed by the police about the obscene calls to Pennsylvania, he ran the two phone numbers given to him by the police through his computer system. Appellant's extension was shown as the number from which the calls originated. Appellant was confronted with these facts and though he never admitted to the phone calls, the calls ceased after appellant was confronted. This evidence "clearly proves" appellant's identity as the perpetrator of the offenses. Appellant's eighth point of error is overruled.

■ In his ninth point of error, appellant argues the State violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in its peremptory strike against venireman Frankie Jordan. Appellant claims the trial court erred in overruling his *Batson* objection. The State responds that appellant failed to establish a prima facie case of racial discrimination and alternatively, that appellant failed to prove purposeful discrimination.

■ In *Batson*, the Supreme Court outlined the test for challenges to the State's peremptory strikes. Initially, the defendant must establish a prima facie showing of racial bias in the State's exercise of its peremptory strikes. The burden then shifts to the State to articulate race-neutral explanations for its questioned strikes. The defendant may rebut these explanations. The trial court must then determine whether the defendant has carried his burden of proving racial discrimination. The trial court's determination represents a finding of fact accorded great deference and will not be overturned unless clearly erroneous. *Adanandus v. State*, 866 S.W.2d 210, 224 (Tex.Crim.App. 1993).

■ The State argues appellant did not establish a prima facie case. However, because the State failed to object to the absence of a ruling on appellant's prima facie case, that issue is moot. *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App. 1993). The only question remaining is whether appellant met his burden of establishing racial discrimination. *Id.* Appellant fails to carry his burden.

After appellant challenged the State's peremptory strike of Jordan, the prosecutor explained, essentially, that her instincts about Jordan told her that he was not a good juror for the State, noting in particular Jordan's comments that though he had not contemplated the death penalty, per se, his verdict would include the knowledge that mistakes can be made and occasionally result in people being wrongly convicted of crimes which they did not commit. Appellant rebuts that there was no meaningful examination of Jordan and argues that the State's explanation is obviously a pretext for a racial strike since it bears no rational relationship to the case at bar.

Contrary to appellant's assertions, the State's explanation is race neutral on its face and in the context of peremptory strikes, which may be more intuitive than rational, the explanation is reasonable. Noting the absence of any real rebuttal—for example, that no white venire members with similar views were ignored by the State—we cannot hold that the trial court abused its discretion in finding that appellant failed to carry its burden. Appellant's ninth point of error is overruled.

■ Appellant contends in point of error ten that the trial court erred in admitting into evidence photographs that were more prejudicial than probative. TEX. R. EVID. 403. Specifically, appellant complains of the following: (Exhibit No. 63) a closeup of the victim's face with brain matter extruded through the large wound on the side of the head, (Exhibit No. 64) a closeup of torn skin around the bullet wound to the head, (Exhibit No. 65) a

closeup of the exit wound in the back of the head, (Exhibit No. 66) an overview of the rear of the victim's body with exit and reentry wounds clearly visible, (Exhibit No. 67) a closeup of the reentry wound on the back of the victim's shoulder, (Exhibit No. 71) a closeup of the victim's duct-taped hands from underneath, (Exhibit No. 72) a closeup of the victim's bound hands from the side, and (Exhibit No. 73) a closeup of the victim's bound hands from the side. The photographs were in color and accompanied the testimony of the State's pathologist.

Rule 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Several factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs, including the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed, and the availability of other means of proof and the circumstances unique to each individual case. *Emery v. State*, 881 S.W.2d 702, 710 (Tex.Crim.App.1994)(quoting *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App. 1991)). The admissibility of photographs is within the sound discretion of the trial judge. *Jones v. State*, 843 S.W.2d 487, 501 (Tex.Crim.App.1992).

According to the briefs, the size of the original exhibits is uncertain but probably 8½" × 11" and the exhibits were in color. Appellant does not allege any tampering, enhancement, or attempt by the State to inflame, confuse, or mislead the jury in its presentation of the photographs. The photographs depict nothing outside of what was included in the testimony of the State's pathologist, Dr. Jeffery Barnard. Indeed, appellant's primary argument is that because the photographs merely corroborated Barnard's testimony and com-

municated uncontested information, their probative value was insignificant compared to their inflammatory nature.

We reject the premise that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value. Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. Nor do we agree with appellant's assertion that the photographs are inflammatory. The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed. And it is precisely because they depict the reality of this offense that they are powerful visual evidence, probative of various aspects of the State's case. As we stated in *Sonnier*:

> Appellant must realize that it is precisely the quality which we describe as "powerful" which gives rise to his arguments that the photographs are prejudicially inflammatory. But when the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome.

913 S.W.2d 511, 519 (Tex.Crim.App.1995). Indeed, we find the photographs in this case and appellant's complaints legally indistinguishable from those raised and rejected in *Sonnier*.

Finding that the photographs are not more prejudicial than probative, we hold that the trial court did not abuse its discretion in admitting the photographs of which appellant complains. Appellant's tenth point of error is overruled.

In his eleventh point of error, appellant argues the trial court erred in refusing to instruct the jury on the definitions of the

statutory terms probability, deliberately, criminal acts of violence and continuing threat to society. Art. 37.0711 § 3(b)(1) and (2). Appellant also argues that the trial court erred in refusing to define the terms because they are unconstitutionally vague and violate the requirement that capital offenses be narrowly defined and death be imposed without caprice. It is well settled that no jury charge defining these terms is required. *King v. State,* 553 S.W.2d 105, 107 (Tex.Crim.App.1977). Similarly, appellant's attack on the constitutionality of Article 37.0711 on grounds of vagueness and caprice cannot survive the holding of *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)(upholding the constitutionality of Article 37.071). Appellant's eleventh point of error is overruled.

Appellant complains in his twelfth point of error that the 12–10 rule of Article 37.0711, § 3(d)(1) and (2), which requires at least ten "no" votes for a jury to reach a negative answer to the first and second special issues and at least ten "yes" votes for the jury to return an affirmative answer to the mitigation special issue, violates the eighth amendment and due process guarantees of the United States Constitution. *See also* Art. 37.0711 § 3(f)(2). This Court has repeatedly rejected this argument. *E.g., McFarland v. State,* 928 S.W.2d 482, 519 (Tex.Crim. App.1996). Appellant also argues that jurors must be informed that their single vote may give effect to the mitigation special issue; apparently, appellant is here challenging the constitutionality of Article 37.0711 § 3(i), prohibiting anyone from informing jurors of the effects of a deadlock. This Court has repeatedly rejected this argument. *Id.* Appellant's twelfth point of error is overruled.

In points of error thirteen and fourteen, appellant cites Justice Blackmun's dissenting opinion in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), to argue that there exists irreconcilable tension between the constitutional requirements of eliminating caprice from the imposition of the death penalty and of allowing each juror a well reasoned moral response to the evidence. Appellant argues under the federal and state constitutions, respectively. This argument has been repeatedly rejected. *E.g., McFarland,* 928 S.W.2d at 520. Appellant's thirteenth and fourteenth points of error are overruled.

■ In points of error fifteen and sixteen, appellant argues the cumulative effect of all of the above alleged errors denies him due process and due course of law. Appellant argues that even if none of the errors alone rose to the magnitude of constitutional breach, their cumulative effect does. It is conceivable that a number of errors may be found harmful in their cumulative effect. *See e.g., Stahl v. State,* 749 S.W.2d 826, 832 (Tex.Crim.App.1988) (holding harm lies in the cumulative effect of the outburst and the improper arguments). But, we are aware of no authority holding that non-errors may in their cumulative effect cause error. Appellant's fifteenth and sixteenth point of error are overruled.

The judgment of the trial court is AFFIRMED.

WOMACK, J., joins the opinion of the Court, except as to point of error three; WOMACK, J., delivered a concurring opinion.

WOMACK, J., filed a concurring opinion.

I join the judgment of the Court and, except as to Point of Error Three, its opinion. The Court should review the factual sufficiency of the evidence to support the jury's verdict on the probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society.