IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,212






MICHAEL SIGALA, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM COLLIN COUNTY






 Cochran, J., delivered the opinion of the unanimous court.



O P I N I O N



 In October 2001, a jury convicted appellant of capital murder. Tex. Pen. Code
Ann. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas
Code of Criminal Procedure article 37.071, §§ 2(b) and 2(e), the trial judge sentenced
appellant to death. Tex. Code Crim. Pro. art. 37.071, § 2(g). (1) Direct appeal to this Court
is automatic. Id. at 37.071, § 2(h). Appellant raises twenty-one points of error, including a
challenge to the sufficiency of the evidence to support the jury's finding that appellant
would be a continuing threat to society. See id. at art. 37.071, § 2(b). We affirm.

STATEMENT OF FACTS


 On August 22, 2000, appellant unlawfully entered the home of Kleber and Lilian
Dos Santos. Once inside, appellant executed Kleber with a single gunshot to his head. He
then apparently forced Lilian to remove her clothes and wash herself. In the bedroom,
appellant bound Lilian's hands and neck with telephone cords, then dripped hot wax from a
nearby candle onto her labia, whipped her buttocks with a belt or something rod shaped, and
cut the inside of her thigh. While torturing his victim, appellant masturbated and ejaculated
on the floor. Finally, he shot Lilian in the face and again in the side of the head, causing
her death.

 After the murders, appellant tried to remove all evidence of his presence by wiping
his prints off everything and cleaning the carpet where he had masturbated. He also helped
himself to a drink, watched television, and selectively ransacked the apartment. When he
left, appellant took the Santos' wedding rings and several other items.

 The police apprehended appellant two months later after several of the stolen items
were recovered from various shops and traced back to him. Appellant confessed to killing
Kleber, ejaculating as Lilian lay on the bed, and stealing the couple's rings. Testing of the
semen discovered on the floor next to the bed revealed an "exact" DNA match to appellant. 
A firearms expert testified that all of the bullets recovered from the scene were fired from
the same weapon. Although appellant attempted to blame Lilian's assault on another, no
evidence connected another perpetrator to the scene.

 At the punishment stage of trial, the State presented evidence that appellant abused
drugs, attended drug rehabilitation without success, had been expelled from high school,
and had a substantial criminal history including thefts, marijuana possession, robbery, and
burglary. Appellant also admitted to one witness that he belonged to a gang. Finally, a
mental-health expert testified that appellant had an antisocial personality disorder and could
be described as a "sadistic sexual predator."

PRE-TRIAL AND VOIR DIRE


 Appellant complains in his twelfth point of error that the trial court erred in failing
to grant his motion for a change of venue. Article 31.03(a)(1) provides that a change of
venue may be granted on a defendant's motion if "there exists in the county where the
prosecution is commenced so great a prejudice against him that he cannot obtain a fair and
impartial trial." The mere existence of media attention or other publicity does not
automatically establish prejudice or require a change of venue. In fact, selected jurors do
not have to be totally ignorant of the facts and issues of a particular case. Bell v. State, 938
S.W.2d 35 (Tex. Crim. App. 1996). To warrant a change of venue, pretrial publicity must be
so pervasive and prejudicial as to create a reasonable probability that an impartial jury
cannot be empaneled even with the most careful voir dire. Narvaiz v. State, 840 S.W.2d
415, 428 (Tex. Crim. App. 1992). An appellate court reviewing a trial judge's decision on
this matter may reverse only for abuse of discretion. Willingham v. State, 897 S.W.2d
351, 357 (Tex. Crim. App. 1995). Appellant bears the burden of showing that the trial
judge's ruling was not within the realm of reasonableness. Penry v. State, 903 S.W.2d 715,
727 (Tex. Crim. App. 1995); Narvaiz, 840 S.W.2d at 428.

 In the instant case, appellant filed a motion for a change of venue alleging that he
could not receive a fair and impartial trial in Collin County because the trial had been
extensively publicized in a prejudicial manner. Appellant's motion was accompanied by his
own affidavit in which he stated that, based on the publicity surrounding his case, there
existed a prejudice so great that he simply could not obtain a fair and impartial trial in
Collin County. He also noted that he could not receive a fair and impartial trial based on
the demographics of the county and the lack of minority representation. Appellant provided
affidavits virtually identical to his own from three additional residents of Collin County. 
The State controverted appellant's motion with affidavits from thirteen residents of the
county in which each affiant asserted that the conclusions stated in appellant's affidavits
were incorrect, that a fair and impartial jury could be impaneled in Collin County, and that
appellant could obtain a fair and impartial trial in that county. During the pretrial hearing on
the motion, neither party called witnesses and both relied on the affidavits supporting their
respective positions. As additional support, appellant filed as exhibits six articles from the
local newspaper spanning a six month time period. These articles appeared to fairly and
accurately reflect the facts in the case. (2)

 Appellant has not shown that pretrial publicity was so pervasive and prejudicial as to
create a reasonable probability that an impartial jury could not be empaneled. Narvaiz, 840
S.W.2d at 428. Based upon the record before us, appellant has failed to meet his burden of
showing that the trial judge's decision was outside of the realm of reasonableness. Penry,
903 S.W.2d at 727. Point of error twelve is overruled.

 In his second point of error, appellant asserts that the trial court violated his due
process rights under the Fourteenth Amendment by allowing the State to exercise a
peremptory challenge on veniremember Widener after she had been accepted by both
parties. The record shows that the parties began questioning Widener just six days after the
destruction of the World Trade Center Towers. During questioning, the veniremember
hesitated and exhibited nervousness in giving some responses. Toward the end of the
State's questioning, the prosecutor noted that Widener had a trip to New York scheduled. 
She also stated that the proposed date to begin the trial, October 1, 2001, would conflict
with Widener's trip. Widener told the prosecutor that she did not know if she was still
going to go. She and her traveling companions were holding off on that decision until they
knew whether the United States was going to war. Widener also stated that she had other
business trips scheduled for October.

 At the conclusion of the questioning, the State accepted Widener then passed her to
appellant who also accepted her. However, when the judge told Widener that she had been
accepted as a juror and began discussing scheduling, Widener became noticeably upset. 
After further discussion, the judge asked Widener to step back into the jury room for a few
moments. He then asked the parties whether they wanted to question Widener further in
light of the last exchange. The prosecutor accepted the extra time, stating that Widener
"started bawling" when the judge told her she was on the jury and suggested that her
reaction needed to be explored. Appellant, on the other hand, claimed that Widener had
already been accepted and asked the Court to explain the reason for the extra time. The
court then took a break to review the law on the issue. 

 Upon further questioning of the prospective juror, defense counsel elicited the fact
that the events of the past week had made Widener emotional, nervous, and stressed. She
also admitted that she was concerned for her personal safety and had been thinking about
Demi Moore and the movie "The Juror." Both the trial judge and the defense assured her
that it was most unlikely that her personal safety was in jeopardy. Widener stated that she
originally thought that she could do the job required of her as a juror, but the national
tragedy and the life and death nature of the trial made her fear for her safety, and she "just
lost it." When asked again whether she could perform the duties of a juror, she hesitated
and gave equivocal answers. Finally, when pressed, Widener stated that after her emotional
outburst, she did not feel that she could perform the job required. When pressed further,
she said that she could follow her oath.

 The judge again asked Widener to step into the jury room while the court and the
parties discussed the situation. As soon as Widener left, the State asked to exercise a
peremptory challenge on her. Appellant again complained that the juror had already been
accepted as a juror. The State then explained that two new pieces of information had come
to light since that time: (1) that Widener could not handle being accepted as a juror, and
(2) that both the State and the defense had witnesses lined up to begin trial on October 1,
but accommodating Widener's vacation plans (if she decided to go) would push back the
start date of the trial and cause the State "extreme inconvenience." When asked whether
Widener would cancel her plans, the veniremember answered that she could not make a
decision at that time because her plans were intertwined with those of three others. The
court then allowed the State's exercise of a peremptory strike and recognized that it was
"over the defense's objection." (3)

 Article 35.13 provides that a prospective juror, once qualified, shall be passed for
acceptance or challenge first to the State and then to the defendant. Challenges are either
peremptory or for cause. Tex. Code Crim. Proc. art. 35.13. However, the procedure
controlling the order and timing of the exercise of peremptory challenges is not absolute. 
Ex parte Busby, 990 S.W.2d 263, 265 (Tex. Crim. App. 1999). Furthermore, at any time
before the entire jury has been selected and sworn, the judge has discretion to allow further
examination of a venireperson and to entertain additional challenges when it comes to his
attention that a previously selected juror may be objectionable for cause, excusable, or
otherwise disqualified from jury service. Draughon v. State, 831 S.W.2d 331, 335 (Tex.
Crim. App. 1992). The trial court also has broad discretion to excuse prospective jurors
for good reason. Wright v. State, 28 S.W.3d 526, 533 (Tex. Crim. App. 2000), cert.
denied, 531 U.S. 1128 (2001); Tex. Code Crim. Proc. art. 35.03. This authority
continues even after an individual juror has been sworn, exists until the entire jury is
empaneled and sworn, and can be exercised with or without the consent of the parties. 
Wright, 28 S.W.3d at 533. 

 Thus, even if the trial court improperly allowed the State to exercise a peremptory
challenge after the juror had been accepted, the error was harmless: the trial judge still
retained discretion to excuse the juror without any peremptory challenge. Given the
national tragedy, the fear and emotion that it engendered in Widener, and the
veniremember's equivocating and vacillating answers to questions, the judge was within his
discretion under article 35.03 to determine that Widener was not fit to serve on this jury. 
Id. Point of error two is overruled.

 Appellant complains in his fourth point of error that the trial court erred in denying
his challenge for cause to prospective juror Hudson, in violation of the Sixth, Eighth, and
Fourteenth Amendments to the United States Constitution. To preserve error on a denied
challenge for cause, an appellant must demonstrate on the record that: (1) he asserted a
clear and specific challenge for cause; (2) he used a peremptory challenge on the
complained-of venireperson; (3) all his peremptory challenges were exhausted; (4) his
request for additional strikes was denied; and (5) an objectionable juror sat on the jury. 
Feldman v. State, 71 S.W.3d 738, 743-45 (Tex. Crim. App. 2002); Green v. State, 934
S.W.2d 92, 105 (Tex. Crim. App. 1996). The record reflects that appellant failed to
exhaust all fifteen of his peremptory challenges, therefore, he has failed to preserve any
error for review on appeal. Feldman, 71 S.W.3d at 744. Appellant's fourth point of error
is overruled.

 In his eleventh point of error, appellant claims that the trial court erred in admitting
his videotaped custodial statement because it was not made voluntarily. Specifically,
appellant claims that his statement was not the product of a free and unconstrained choice
because: (1) after appellant's arrest, the police kept him in a small room for three hours
without allowing him to make a telephone call; (2) the videotape fails to show that appellant
affirmatively waived his right to remain silent; (3) the detectives began questioning
appellant after midnight and continued until approximately 3:00 a.m.; (4) appellant had "a
less than average ability to resist pressure due to physical fatigue"; (5) appellant had been
diagnosed as bipolar but the detectives never investigated his mental state; and (6) appellant
was very cold throughout the process. 

 "[A] defendant in a criminal case is deprived of due process of law if his conviction
is founded, in whole or in part, upon an involuntary confession, without regard for the truth
or falsity of the confession, and even though there is ample evidence aside from the
confession to support the conviction." Jackson v. Denno, 378 U.S. 368, 376 (1964). 
Coercive police activity is a necessary predicate to the finding that a confession is not
"voluntary." Colorado v. Connelly, 479 U.S. 157, 167 (1986). A court must determine
whether the defendant's will was overborne by the circumstances surrounding the giving of
the confession. Dickerson v. United States, 530 U.S. 428, 434 (2000). It must take into
consideration the totality of all the surrounding circumstances, including both the
characteristics of the accused and the details of the interrogation. Id. The defendant has a
right to a hearing outside the presence of the jury to determine whether the confession was
voluntary. Jackson, 378 U.S. at 377. The trial court is the sole fact-finder at the hearing
and may believe or disbelieve any or all of the witnesses' testimony. Alvarado v. State,
853 S.W.2d 17, 23 (Tex. Crim. App. 1993). This Court generally will not disturb any
factual finding which is supported by the record. Id.

 During the hearing on appellant's motion to suppress his statement, Detective Scott
Epperson testified that police officers arrested appellant in Dallas around 8:15 p.m. on
October 19, 2000, pursuant to a capias issued on a motion to revoke his probation in
another case. They then drove him to the Plano Police Department. (4) It is unclear from the
record exactly how long it took to drive appellant from where he was arrested in Dallas to
the Plano Police Department. It is also unclear where appellant was from the time he
arrived at the station until he was taken to the interview room. Around midnight, appellant
was taken to an interview room where he was joined shortly thereafter by Plano Detectives
Epperson and Keith Grisham. Upon entering the interview room, the detectives noticed
that appellant was cold, so they obtained a blanket for him. 

 At the beginning of the videotaped interview, Epperson clarified with appellant that
he had expressed a desire to talk with the officers. He also told appellant his rights under
Miranda (5) and article 38.22. After Epperson related each right, appellant nodded that he
understood. After relating all of his rights, Epperson asked appellant if he understood and
"[felt] okay about talking." Appellant responded affirmatively. Epperson also asked
appellant whether he felt threatened by him, and appellant replied that he did not. Appellant
expressed a desire to call his mother before commencing the interview but the detectives
suggested that they talk for a while first and then he would be given that opportunity. The
three then talked for more than an hour after which appellant was taken to use a phone to
call his mother. As he exited the interview room, appellant mentioned that he had been
diagnosed as bipolar but had not had any medication for some time. After speaking with his
mother, appellant returned to the interview room and talked with the detectives for a little
longer. Around 3:00 a.m., appellant stated that he was no longer comfortable talking with
the detectives and he needed to talk with an attorney. The detectives terminated the
interview. 

 Sometime after the suppression hearing, the judge made written findings of fact and
conclusions of law. The judge found that the detectives began interviewing appellant around
12:24 a.m. and terminated the interview at approximately 3:00 a.m. However, not all of that
time was spent interviewing appellant because appellant was allowed to leave the interview
room to call his mother. The judge further found that while appellant was noticeably cold,
the detectives obtained a blanket for him. The judge found that Epperson had given
appellant the appropriate warnings and concluded that appellant knowingly and voluntarily
waived those rights and freely made the statements reflected in the videotape. The judge
found that appellant's demeanor, attitude, and participation in the discussion, as shown on
the videotape, clearly demonstrated that he was not coerced or induced into giving the
statements. This also indicated that appellant's alleged bipolar condition did not affect his
ability to voluntarily give a statement. After he was allowed to contact his mother,
appellant freely continued to answer the detectives' questions. Appellant's understanding
of his rights was further illustrated by his later termination of the questioning and request
for counsel. 

 The record supports the trial court's findings and conclusions; it does not support
appellant's allegations. The trial court did not abuse its discretion in overruling appellant's
motion to suppress his videotaped statement. Appellant's eleventh point of error is
overruled. 

TRIAL


Guilt/Innocence


 Appellant argues in his thirteenth point of error that the trial court erred in admitting
a number of photographs into evidence. The admissibility of a photograph is within the
sound discretion of the trial judge. Generally, a photograph is admissible if verbal
testimony as to matters depicted in the photograph is also admissible. See Long v. State,
823 S.W.2d 259, 271-72 n.18 (Tex. Crim. App. 1991). Autopsy photographs are also
generally admissible unless they depict mutilation of the victim caused by the autopsy
itself. See Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998); Long, 823
S.W.2d at 271-72. Otherwise, admissibility of photographs is governed by Rule 403 of the
Texas Rules of Evidence which states:

 [a]lthough relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of
cumulative evidence.


See Long, 823 S.W.2d at 271-72. Rule 403 favors the admission of relevant evidence and
carries a presumption that relevant evidence will be more probative than prejudicial. 
Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); see also Jones v.
State, 944 S.W.2d 642, 651-52 (Tex. Crim. App. 1996), Long, 823 S.W.2d at 271. The
trial court's decision will not be disturbed on appeal unless it falls outside the zone of
reasonable disagreement. Jones, 944 S.W.2d at 651-52. 

 A court may consider many factors in determining whether the probative value of
photographs is substantially outweighed by the danger of unfair prejudice. (6) These factors
include: the number of exhibits offered, their gruesomeness, their detail, their size,
whether they are in color or black and white, whether they are close-up, and whether the
body depicted is clothed or naked. Id. A court, however, should not be limited by this list. 
The availability of other means of proof and the circumstances unique to each individual
case should also be considered. Id.

 In his argument on appeal, appellant separates the complained-of photographs into
three groups. The first group consists of photographs of the crime scene, the second
consists of pictures developed from a roll of film found at the crime scene, and the third
consists of autopsy photographs. We will address each group separately.

 In the first group of photographs, appellant complains of State's Exhibits 115
through 132 and 137. These crime scene exhibits depict Lilian's nude body and the
surrounding area as found by the police. At trial, appellant objected that the exhibits were
not relevant because Lilian was not the named murder victim. He asserted that this fact also
made the pictures more prejudicial than probative. See Tex. R. Evid. 401-403.

 Appellant was indicted in a three paragraph indictment. The first paragraph alleged
that appellant murdered Kleber while in the course of committing aggravated sexual assault
on Lilian. While she was not the named murder victim, Lilian was a named victim of the
crime that elevated Kleber's murder to capital status. Consequently, evidence concerning
the sexual assault, including photographs thereof, was highly relevant. Tex. R. Evid. 401-402. 

 With regard to appellant's Rule 403 objection, these exhibits appear in the record as
8" x 10" color photographs, however, they were shown to the jury on a large screen through
a PowerPoint presentation. Each photograph depicts the scene from a different angle with
some showing a particular aspect of the scene close-up. In some of the photographs,
Lilian's body has been rolled on its side to better show the extent of her injuries. While the
exhibits do show a fair amount of blood, they depict only the injuries that appellant
inflicted on the victim. The judge was within his discretion in finding that the probative
value of these exhibits was not substantially outweighed by any prejudicial effect. See, e.g.,
Etheridge v. State, 903 S.W.2d 1, 21 (Tex. Crim. App. 1994).

 The second group of photographs about which appellant complains consists of
State's Exhibits 238-240 and 244-250. (7) These exhibits consist of photographs which were
developed from a roll of film found at the crime scene. Some of the pictures are of the
interior of the victims' apartment and others show the victims on vacation. The only
objection appellant made to these photographs at trial was that the State had failed to lay the
proper predicate for their admission. Because appellant does not argue on appeal that the
State failed to lay the proper predicate, he has not adequately briefed this point with respect
to these photographs. Tex. R. App. P. 38.1. 

 In the last group of photographs, appellant complains of State's Exhibits 274, 277-279, 281, 284, 288-292, 297-298, 300-301, and 303-306. The first six of these exhibits
depict Lilian's nude body as the police found it. The remaining pictures show Lilian's body
after it was taken to the medical examiner. At trial, appellant objected "under Rule 403 of
the Texas Rules of Evidence." Appellant failed to specifically object that any of these
photographs were cumulative or duplicative of other exhibits entered into evidence. 

 As noted with regard to the first set of photographs, the fact that Lilian was a named
victim in the indictment made both crime scene and autopsy pictures relevant. With regard
to appellant's Rule 403 objection, these exhibits appear in the record as 4" x 6" color
photographs. Each photograph depicts Lilian's body from a different angle or focuses on a
different injury. Only the first six photographs show any amount of blood. In the remaining
exhibits, Lilian's body has been cleaned. All of the exhibits show only the injuries
appellant inflicted on the victim; no alteration by the medical examiner other than cleaning
is apparent. The judge acted within his discretion in finding that the probative value of these
exhibits was not substantially outweighed by any prejudicial effect. See, e.g., Etheridge,
903 S.W.2d at 21. Point of error thirteen is overruled.

Punishment


 In his fourteenth point of error, appellant complains that the evidence presented at
trial was legally insufficient to support the jury's finding that he would be a future danger. 
See Tex. Code Crim. Proc. art. 37.071 § 2(b)(1). In reviewing the sufficiency of the
evidence at punishment, this Court looks at the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have believed, beyond a
reasonable doubt, that appellant would probably commit criminal acts of violence that
would constitute a continuing threat to society. See Jackson v. Virginia, 443 U.S. 307
(1979); Allridge v. State, 850 S.W.2d 471 (Tex. Crim. App. 1991). A jury can rationally
infer future dangerousness from the circumstances of the offense and the surrounding
events alone. Bell, 938 S.W.2d at 41; Sonnier v. State, 913 S.W.2d 511, 517 (Tex. Crim.
App. 1995).

 The facts of the instant case show that appellant executed Kleber, tortured and
sexually assaulted Lilian while sexually gratifying himself, executed Lilian, and then
attempted to cover his tracks while making himself at home in the victims' apartment. The
facts of the offense alone were sufficient to support the jury's affirmative answer to the
future dangerousness issue. Nonetheless, the State presented more. Although only twenty-three years of age at the time of this offense, appellant already had a long history of
criminal conduct which included thefts, burglaries, robberies, and drug abuse. 

 Given these facts, we hold the evidence legally sufficient to support the jury's
affirmative answer to the future dangerousness issue. Jackson, 443 U.S. 307; Martinez v.
State, 924 S.W.2d 693, 696-97 (Tex. Crim. App. 1996). Point of error fourteen is
overruled. 

 In his first point of error, appellant asserts that the trial court erred in allowing
victim impact testimony from Liezete Dos Santos. However, the only objection he voiced
to the testimony at trial was that certain answers were non-responsive. Because the
objections at trial do not comport with the complaint raised on appeal, appellant has not
preserved this issue for our review. Trevino v. State, 991 S.W.2d 849, 855 (Tex. Crim.
App. 1999); Tex. R. App. P. 33.1. Appellant also complains in this point that the State
should not have been allowed to introduce photographs of the victims taken before their
deaths. However, when this evidence was offered, appellant affirmatively stated that he had
"[n]o objection." This response forfeited any claim appellant might have had to their
admissibility. Moody v. State, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992). Appellant's
first point of error is overruled. 

 Appellant alleges in his third point of error that the trial court erred in limiting the
testimony of Dr. Laura Slaughter regarding her treatment of appellant. He asserts that this
violated his right to due process as guaranteed by the Fourteenth Amendment to the United
States Constitution. 

 Prior to trial, the State filed a motion requesting that appellant be required to submit
to a psychiatric examination if he intended to introduce psychiatric evidence based on an
examination by a defense expert. Appellant gave notice that he intended to call Dr.
Slaughter to testify on his behalf at punishment. Outside the jury's presence, appellant
established that Dr. Slaughter would testify that she was a psychiatrist in private practice. 
One day a week, she contracted her services to the Collin County Detention Center which
included meeting with inmates in the county jail. She interviewed appellant on four
different occasions while he was in jail awaiting trial in this case . Pursuant to her own
examination and that of her predecessor, Dr. Slaughter determined that appellant had a
history of mental illness and suffered from bipolar disorder. She told the court that she
was also treating appellant for depression and sleep problems related to this disorder. Dr.
Slaughter then defined bipolar disorder and told the court what medications she had
prescribed appellant. Finally, Dr. Slaughter testified that she had not had any problems with
appellant, and she was not afraid of him.

 The State objected to any evidence concerning a psychiatric diagnosis of appellant. 
In the alternative, the prosecutor stated that the State would withdraw its objection if a State
expert was allowed to examine appellant prior to the admission of the testimony. The court
sustained the objection and granted the State's motion disallowing the testimony unless
appellant submitted to a court-ordered psychiatric exam. Objecting to the ruling and
making it clear that he would not submit to such an exam, appellant then sought to offer a
limited version of Dr. Slaughter's testimony. The court ruled that it would allow Dr.
Slaughter to testify to: (1) the fact that she ordered the dispensing of certain medications;
(2) the names of those medications but not their purpose; (3) the number of times she met
with appellant; and (4) the fact that appellant never caused her any problems. Appellant
specifically complains on appeal that the trial court prohibited him from introducing Dr.
Slaughter's diagnosis of his mental illness and symptoms into evidence.

 In Chamberlain v. State, we held that a trial court has the authority to exclude
testimony from a defendant's psychiatric expert which is based upon an examination of the
defendant unless he submits to an examination by the State's expert. Chamberlain v. State,
998 S.W.2d 230, 233-34 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000);
Lagrone v. State, 942 S.W.2d 602 (Tex. Crim. App. 1997); Soria v. State, 933 S.W.2d 46
(Tex. Crim. App. 1996). As we explained in Chamberlain, this holding is governed by the
principle that if a defendant breaks his silence to speak to his own psychiatric expert and
introduces testimony based on such interview, he has constructively taken the stand and
waived his Fifth Amendment right to refuse to submit to the exam by State's psychiatric
experts. 998 S.W.2d at 233-34.

 The focus is on the defendant's choice to waive his right to silence and whether the
psychiatric testimony he intended to introduce was based on his own participation in the
psychiatric testing and examination. Id. If the defendant wishes to introduce psychiatric
testimony based upon his participation in a psychiatric examination, then he has waived his
Fifth Amendment privilege in the same manner as if he elected to testify at trial. Id. The
essential principles at work are waiver and parity-if a defendant testifies, the State is
allowed to cross-examine him. Id. 

 The testimony appellant sought to introduce here was based upon his willing
participation in psychiatric interviews. Without the limitation imposed by the trial court,
appellant would have placed this testimony into evidence while effectively limiting the
State's ability to cross-examine him. We conclude, therefore, that the trial judge did not
violate appellant's due process rights by refusing to give appellant this advantage. 
Appellant's third point of error is overruled.

 In points of error five through seven, appellant complains about the testimony of Dr.
Lisa Clayton, a psychiatrist the State called in rebuttal at the punishment phase of trial. 
Appellant claims that the admission of Clayton's testimony denied him due process under
the Fourteenth Amendment to the United States Constitution and his "right to reliability and
individualized sentencing" under the Eighth Amendment. Specifically, he asserts on appeal
that her testimony was false and misleading. However, except for one objection to a non-responsive answer, appellant did not object at trial to Clayton's testimony, and even
constitutional error can be waived by failing to object. Wright, 28 S.W.3d at 536. Because
appellant failed to object at trial he has failed to preserve these issues for our review. Tex.
R. App. P. 33.1. Points of error five through seven are overruled.

 In his eighth point of error, appellant contends that the State's improper comment on
his lack of remorse constituted a comment on his failure to testify and thus violated his
right to remain silent guaranteed by the Fifth Amendment. Specifically, appellant
complains about the prosecutor's argument at the punishment phase:

 The answer to the future dangerousness [question] is yes, he will always be
dangerous. There is no mitigation. Not even any. The answer to that
question is, no. There is no reason he should serve life in prison, none at all. 
That would be an act of mercy that he doesn't deserve. He had no remorse. 
You heard it from his mother. He doesn't care about other people. He finds
their suffering funny. (8)

 In Griffin v. California, 380 U.S. 609 (1965), the United States Supreme Court
interpreted the Fifth Amendment guarantee against self-incrimination to mean that a
comment on the defendant's failure to testify was an unconstitutional burden on this basic
right. To violate the prohibition against commenting on a defendant's failure to testify, a
comment must be manifestly intended to be (or be of such a character that the jury naturally
and necessarily takes it to be) a comment on the accused's failure to testify. Goff v. State,
931 S.W.2d 537, 548 (Tex. Crim. App. 1996). The fact that the language might be
construed as an implied or indirect allusion to a defendant's failure to testify is not
sufficient. Id. 

 A statement referencing evidence which can only come from the defendant is a
direct comment on the defendant's failure to testify. Goff, 931 S.W.2d at 548; Madden v.
State, 799 S.W.2d 683, 700 (Tex. Crim. App. 1990). The present statement that appellant
"had no remorse" could be deduced from sources other than appellant, including, as the
State explicitly noted, his own mother's testimony. Appellant's Fifth Amendment rights
were not violated. Point of error eight is overruled. 

INEFFECTIVE ASSISTANCE OF COUNSEL


 In point of error nine, appellant contends that his trial counsel rendered ineffective
assistance at the guilt or innocence phase of trial when he failed to use all of his
peremptory strikes thereby failing to preserve error for the claim he raised in point of error
four, supra, regarding his challenge for cause to prospective juror Hudson. In his tenth
point of error, appellant complains that his counsel rendered ineffective assistance at the
punishment phase of trial when he:

 (A) failed to object to victim impact testimony given by Liezete Dos Santos
(see point of error one);


 (B) failed to object to Dr. Clayton's opinion testimony that mitigation
factors are "useless" and to her ultimate opinion regarding punishment (see
points of error five through seven);


 (C) failed to recall Dr. Slaughter to testify regarding her diagnosis of
appellant as being bipolar (see point of error three);


 (D) failed to object to hearsay regarding extraneous offenses committed by
others in the Texas Department of Criminal Justice, Institutional Division
(hereinafter "TDCJ-ID");


 (E) failed to introduce the psychiatric records of appellant's mother;


 (F) failed to object to the prosecutor's argument that appellant lacked
remorse thereby failing to preserve appellant's Fifth Amendment claim (see
point of error eight);


 (G) failed to elicit important mitigating information during the punishment
phase.


 The proper standard for reviewing an ineffective assistance of counsel claim was
established in Strickland v. Washington, 466 U.S. 668 (1984) (adopted by this Court in
Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986)). Under Strickland, a
defendant must first demonstrate that his trial counsel's performance was deficient. 
Secondly, he must show that his counsel's deficient performance was so serious that it
prejudiced his defense, rendering the trial unfair and the verdict suspect. Strickland, 466
U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. 364 (1993). In other words, appellant
must prove, by a preponderance of the evidence, that trial counsel's representation fell
below an objective standard of reasonableness under prevailing professional norms and that
this deficient performance rendered the result of the proceeding unreliable. Strickland,
466 U.S. at 687. Appellate review of defense counsel's representation is highly deferential
and presumes that counsel's actions fell within the wide range of reasonable and
professional assistance. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002);
Chambers v. State, 903 S.W.2d 21, 33 (Tex. Crim. App. 1995). The analysis of effective
assistance is undertaken in light of the "totality of the representation" rather than by
examining isolated acts or omissions of trial counsel. Wilkerson v. State, 726 S.W.2d
542, 548 (Tex. Crim. App. 1986). The fact that another attorney may have pursued a
different tactic at trial is insufficient to prove a claim of ineffective assistance. King v.
State, 649 S.W.2d 42 (Tex. Crim. App. 1983).

 Under most circumstances, the record on direct appeal will not be sufficient to
show that counsel's representation was so deficient and so lacking in tactical or strategic
decision-making as to overcome the strong presumption that counsel's conduct was
reasonable and professional. Bone, 77 S.W.3d at 833. As this Court recently explained,
rarely will the trial record contain sufficient information to permit a reviewing court to
fairly evaluate the merits of such a serious allegation. "[I]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the failings of
trial counsel." Id. A reviewing court can frequently speculate on both sides of an issue, but
ineffective assistance claims are not built on retrospective speculation; rather, they must
"be firmly founded in the record." Id. 

 The record in this case is not sufficiently developed on appellant's claims of
ineffective assistance of counsel. From the information available to us, we can only
speculate as to why counsel acted or failed to act as he did, and such speculation is beyond
the purview of this Court. Id.; see also Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim.
App. 1997); Jackson v. State, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994) (Baird, J.,
concurring). Without more, we must presume that counsel acted pursuant to a reasonable
trial strategy. Id. Points of error nine and ten are overruled.

CONSTITUTIONALITY OF ARTICLE 37.071 


 In his fifteenth point of error, appellant argues that the "12/10 Rule" of article
37.071, §§ 2(d)(2) and 2(f)(2) is unconstitutional. We have previously addressed and
rejected this contention, and appellant raises no new argument here. Wright, 28 S.W.3d at
537. Point of error fifteen is overruled. 

 In his sixteenth point of error, appellant contends that the trial court failed to define
in the punishment charge the terms "probability," "criminal acts of violence," and
"continuing threat to society." See Tex. Code Crim. Proc. art. 37.071, §§ 2(b) & (e). 
Appellant argues that this failure rendered the charge unconstitutionally vague.

 This Court has repeatedly held that the trial court need not define such terms
because the jury is presumed to understand them without instruction. See, e.g., Ladd v.
State, 3 S.W.3d 547, 572-73 (Tex. Crim. App. 1999). Appellant has given us no reason to
revisit these holdings. Point of error sixteen is overruled.

 In his seventeenth point of error, appellant claims that the Texas death penalty law
violates the state and federal constitutions because it simultaneously restricts and allows
unlimited juror discretion to impose the death penalty. Appellant relies on Justice
Blackmun's dissenting opinion in Callins v. Collins, 510 U.S. 1141 (1994), to support his
argument. We have previously addressed and rejected this claim. See Chamberlain, 998
S.W.2d at 238. Point of error seventeen is overruled.

 In his eighteenth point of error, appellant claims that the Texas death penalty statute,
which authorizes a sentence of death without requiring that the special issues be alleged in
the indictment, violated his due process rights under the Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution. Appellant relies on Apprendi v. New
Jersey, 530 U.S. 466 (2000), to support his argument that the special issues should have
been pled in the indictment.

 Appellant argues that in Apprendi, the United States Supreme Court held that any
fact that increases the penalty for a crime beyond the prescribed statutory maximum must
be alleged in the indictment and proven to a jury beyond a reasonable doubt. He claims that
the Texas statute provides for a life sentence upon conviction, but, if the State seeks the
death penalty, a separate proceeding is held to see if the sentence can be enhanced from life
to death. Thus, he claims the special issues are enhancement factors which must be pled in
the indictment.

 Article 37.071, § 1 provides that if a defendant is found guilty of capital murder in a
case in which the State does not seek the death penalty, the punishment is life
imprisonment. Section 2 provides that if a defendant is tried for a capital offense in which
the State seeks the death penalty, then a separate sentencing proceeding is held "to
determine whether the defendant shall be sentenced to death or life imprisonment." Thus,
when the State is seeking the death penalty, the prescribed statutory maximum is death. See
also Tex. Pen. Code § 12.31. It is not an "enhancement" of a prescribed maximum
sentence of life; it is an alternatively available sentence. We have stated previously, 

 Apprendi applies to facts that increase the penalty beyond the
"prescribed statutory maximum." Under Article 37.071, the statutory
maximum is fixed at death. There are no statutory enhancements. A positive
jury finding on the mitigation issue does not have the potential of increasing
the penalty; rather, it has the potential to reduce a defendant's sentence.


Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003). Apprendi does not require 
the State to allege the special issues under article 37.071 in the indictment. Point of error
eighteen is overruled.

 In his nineteenth point of error, appellant claims that the Texas death penalty statute
placed the burden of proof on him to show that his life should be spared due to mitigating
circumstances, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution. Appellant argues that under Apprendi, 530
U.S. at 476, and Ring v. Arizona, 536 U.S. 584 (2002), the State should bear the burden of
proving beyond a reasonable doubt that there is insufficient mitigation evidence to support
a life sentence. 

 In Resendiz, 112 S.W.3d at 550, we rejected the defendant's claim that Apprendi
requires the State to bear the burden to prove beyond a reasonable doubt that the mitigation
issue should be answered in the negative. We said the defendant was reading Apprendi too
broadly. We also noted that "with respect to appellant's claim the State should bear the
burden of proof as to mitigation, Apprendi does not address this burden."

 Neither does Ring support appellant's argument. Appellant relies on the following
passage from Ring to support his argument that the State should bear the burden of proof on
the mitigation issue:

 [u]nder the due process clause of the Fifth Amendment and the notice
and jury trial guarantees of the Sixth Amendment, any fact (other than prior
conviction) that increases the maximum penalty for a crime must be charged
in the indictment, submitted to a jury, and proven beyond a reasonable doubt.


Ring, 536 U.S. at 600. This passage, like Apprendi, refers to an increase in penalty over
the statutory maximum. In Texas, the statutory maximum for a capital offense is death. The
mitigation issue does not increase the statutory maximum. To the contrary, the mitigation
issue is designed to allow for the imposition of a life sentence which is less than the
statutory maximum. The mitigation issue does not violate appellant's due process rights. 
Point of error nineteen is overruled.

 Appellant claims in his twentieth point of error that the Texas death penalty statute is
unconstitutional under the federal and state constitutions because it fails to require the
State to prove beyond a reasonable doubt that appellant is dangerous. In other words, he
asserts that the Ring decision now requires the State to prove beyond a reasonable doubt
that appellant is a continuing threat, not just that there is a probability that appellant is a
continuing threat. As noted above, the statutory maximum penalty in a capital murder case
is death. Ring does not change this. Likewise, Ring does not render the future
dangerousness question unconstitutional. Point of error twenty is overruled.

 Appellant asserts in his twenty-first point of error that the "cumulative effect" of the
above errors denied him due process under the federal constitution and due course of law
under the Texas Constitution. A number of errors may be found harmful in their cumulative
effect. Chamberlain, 998 S.W.2d at 238. However, cumulative error has not been shown
here. See Wright, 28 S.W.3d at 537. Point of error twenty-one is overruled. 

 We affirm the judgment of the trial court. 

Delivered: January 14, 2004.

En banc 

Do Not Publish
1. Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.
2. The record indicates that the pre-trial conference on appellant's change of venue motion was
held on March 21, 2001. The most recent newspaper article contained in the record is dated February
8, 2001. This short article briefly recapped the facts of the murders and reported that the Collin
County District Attorney would be seeking the death penalty. Voir dire did not begin until September
5, 2001, nearly seven months after this article was published. This record does not support a finding
that pretrial publicity was either "pervasive" or "prejudicial." 
3. Although appellant made various comments and complaints during Widener's voir dire, he
never clearly voiced an "objection." Furthermore, it is not clear in appellant's arguments at trial
precisely what he was complaining about. It is also unclear whether appellant's complaint
encompasses due process concerns or simply statutory issues. See art. 35.13. Because the trial judge
recognized appellant's statement as an objection, we will address the merits of appellant's contention,
and we will presume that the objection sufficiently comported with appellant's claim on appeal.
4. Although it was argued at trial and is mentioned in the judge's findings and conclusions,
appellant does not argue on appeal, and we will not address, the validity of his arrest or the attenuation
of any taint caused by an invalid arrest. Tex. R. App. P. 38.1.
5. Miranda v. Arizona, 384 U.S. 436 (1966).
6. On appeal appellant complains that the use of a PowerPoint display of these photographs in
conjunction with the witness's testimony explaining their relevance made the photographs unfairly
prejudicial because they were "plastered onto a big screen." However, appellant did not object at trial
to the use of a PowerPoint projector. Therefore, he has not preserved this particular issue for review. 
Tex. R. App. P. 33.1
7. In his brief, appellant challenges the admission of State's Exhibit 241. This exhibit is not a
photograph. We assume that appellant intended to refer to State's Exhibit 240.
8. The defense did not object to this argument.