ACCEPTED
03-15-00328-cr
6704983
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 2:51:46 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00328-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 2:51:46 PM
JEFFREY D. KYLE
Clerk

******

# DANIEL LORENZO WILSON

## VS.

# THE STATE OF TEXAS
******

ON APPEAL FROM THE 264th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 72,334

******

# STATE'S BRIEF
******

HENRY GARZA
DISTRICT ATTORNEY

BOB D. ODOM
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

# TABLE OF CONTENTS

**ITEM**                                                                                          **PAGE**

Index of Authorities ...............................................................................   3

Statement Regarding Oral Argument ...............................................   5

Statement of the Case ...........................................................................   5

Statement of Facts .................................................................................   6

Summary of State's Argument ............................................................   10

Argument and Authorities ....................................................................   11

    Issue on Appeal ..............................................................................   11
        TRIAL COURT ABUSE DISCRETION IN ADMITTING
        CRIME SCENE PHOTOGRAPHS IN NON-JURY
        PUNISHMENT HEARING UNDER RULE 403?

    Standard of Review ........................................................................   11

    Application and Analysis ...............................................................   12

Prayer ......................................................................................................   30

Certificate of Compliance with Rule 9 ..............................................   30

Certificate of Service ............................................................................   31

# INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Chamberlain v. State*, 998 S.W.2d 230 ................................ 16, 17, 23, 27
    (Tx. Cr. App. 1999)

*Corley v. State*, 987 S.W.2d 615 ........................................................ 15
    (Tx. App. Austin 3rd Dist. 1999 no pet.)

*Erazo v. State*, 144 S.W.3d 487 (Tx. Cr. App. 2004) ........................ 17-20

*Gallo v. State*, 239 S.W.3d 757 (Tx. Cr. App. 2007) .....................11-12, 14

*Hernandez v. State*, 390 S.W.3d 310 (Tx. Cr. App. 2012) ............... 14

*Jackson v. State*, No. AP-75,707, 2010 Tex. Crim. App. ................... 19-20
    Unpub. LEXIS 30, (Tx. Cr. App. 2010), not designated
    for publication

*Jean v. State*, No. AP-76,601, 2013 Tex. Crim. App. ........................ 27-28
    Unpub. LEXIS 785, (Tx. Cr. App. 2013), not designated
    for publication

*Montgomery v. State*, 810 S.W.2d 372 .............................................. 14, 21
    (Tx. Cr. App. 1990) op. on reh'ng.

*Pawlak v. State*, 420 S.W.3d 807 (Tx. Cr. App. 2013) ..................... 14

*Reese v. State*, 33 S.W.3d 238 (Tx. Cr. App. 2000) .......................... 17-20

*Sonnier v. State,* 913 S.W.2d 511 (Tx. Cr. App. 1995) ............... 15-16, 27

*Ex Parte Twine*, 111 S.W.3d 664 (Tx. App. Ft. Worth ..................... 15, 23
    2nd Dist. 2003 rev. ref.)

*Weatherred v. State*, 15 S.W.3d 540 (Tx. Cr. App. 2000) ............... 11

**OTHER** **PAGE**

*Texas Penal Code*

     Section 12.32 ……………………………………………………… 21

     Section 19.02 ……………………………………………………… 21

*Texas Code of Criminal Procedure*

     Article 37.07(3) …………………………………………………… 22, 24

*Texas Rules of Evidence*

     Rule 403 ……………………………………… 10-11, 13-16, 20-21, 27-28

*Texas Rules of Appellate Procedure*

     Rule 33.1 …………………………………………………………… 13

     Rule 44.2(b) ………………………………………………………… 28

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Daniel Lorenzo Wilson, was charged by indictment with the offense of murder. The indictment alleged that he intentionally and knowingly caused the death of Karen Edwards by shooting her with a firearm and stabbing and cutting her with a knife. (RR-4).

The Appellant waived a jury and entered a plea of guilty to the offense charged. (CR-15-22; RR2-7, 8). The trial court took judicial notice of the Appellant's judicial confession admitting all of the elements of the offense as charged in the indictment. (CR-20; RR2-8). There was no plea bargain with the State. (CR-15; RR2-8). The trial court found the evidence sufficient to support a finding of guilty and recessed the hearing for a presentence report. (RR2-9).

After an extensive subsequent hearing on punishment the court found the Appellant guilty and sentenced him to life in the Texas Department of Corrections, Institutional Division. (CR-25; RR3-174, 175).

The Appellant gave timely notice of appeal (CR-29) and the trial court certified his right to do so. (CR-23).

## STATEMENT OF FACTS

Latasha Brown was hanging out with the Appellant at his home. They were drinking beer and Brown was using cocaine when Karen Edwards, who had dated the Appellant, arrived. (RR3-21, 24). Edwards sat down on the sofa and Ms. Brown got up and walked into the bathroom. (RR3-25). As she was closing the bathroom door, however, Brown heard a shot. (RR3-26). She knew that the Appellant kept a gun in a drawer in the sectional sofa. (RR3-26). She had heard no argument prior to the shot. (RR3-27).

After the shot was fired Ms. Brown heard Karen Edwards screaming and saw her seated on the couch holding her leg. The Appellant was next to her with the gun. (RR3-27, 28). Edwards kept asking him to let her leave and promised not to tell anybody and would just walk home. She promised to say that it was an accident. (RR3-29, 30, 31). The Appellant replied that she was not leaving and got a towel or something to try to stop the bleeding. (RR3-31).

Ms. Edwards kept screaming "Daniel, you shot me, you shot me". The Appellant told her to shut up because he could not think and that he loved her. (RR3-32).

About 30 minutes later, Karen Edwards was still seated on the couch and the Appellant was standing over her, when he said "mother fucker you're going to learn to stop playing me" and accused her of never loving him. He then he pointed the gun at her and shot her in the stomach. Brown ran and hid in the shower. (RR3-32, 33).

Ms. Brown heard Edwards begging for her life and pleading with the Appellant to let her call and talk to her kids and her mother one last time. (RR3-34). She heard Edwards scream something that sounded like "my life is leaving me". She then saw Edwards slide across the floor to the bathroom door. (RR3-35).

Ms. Brown urged Edwards to come with her and they would jump out the bathroom window but Edwards said that the Appellant would kill her if she tried that and she could not walk. (RR3-36). The Appellant started taunting Edwards by waiving the gun around and told her that he hoped she had prayed to her maker. (RR3-37). Brown tried to lift her up but could not do so. (RR3-37).

At that point the Appellant grabbed Karen Edwards by the front of her shirt and tossed her aside. He told her again to pray to her maker and shot her in the head. (RR3-39). Then, when he saw she was still breathing, he took a flashlight and started beating her about the face. (RR3-39). The Appellant shot at her head a second time but seemed to have missed. (RR3-39). About an hour had passed between the first shot in the leg and the shots to the head. (RR3-39).

Ms. Edwards was still gurgling from the wound in her head. She was breathing but not talking at that point. The Appellant grabbed her, threw her down on the floor and stepped on her neck, saying "why don't you just die, bitch". (RR3-41). He then grabbed a sword off of the table and just started chopping down on Karen Edwards, cutting and stabbing her. (RR3-42, 43).

The Appellant then ordered Latasha Brown to "get this trash out of my house" but Brown could not lift the body. The Appellant told Brown that she was going to help him get rid of it "or you are next". He pointed the gun at Brown and pulled the trigger, but had no more bullets. (RR3-43, 44).

The Appellant and Ms. Brown first put the body of Karen Edwards on the porch and then dragged it across the street behind a vacant house. (RR3-43, 45, 46).

The Appellant told Brown to get back in the house and as they did he locked the door. He changed his clothes and ordered her to put them in a plastic bag. (RR3-46). Brown then asked him if he had any bleach with which to clean up the scene and told him that she would go and get some. He gave her $5.00 and she left after she called a friend to come and pick her up. (RR3-47).

Latasha Brown was "high out of her mind" and did not know what to do. She went to a friend's house and used more cocaine and alcohol but the memory would not go away. She still had brain matter on her clothing. (RR3-48). Finally, a friend convinced her to call 911 and report the incident. (RR3-49).

Killeen Police Officers went to the scene and arrested the Appellant. They investigated the scene of the crime as well as where the body was located and took photographs. (RR3-101, 102, 104).

The autopsy on the body of Karen Edwards established that she had suffered 4 gunshot wounds, one in the leg, another in the abdomen, one in the forehead, and one that grazed the side of her head. (RR3-86,

87). She also had a slicing cut on her neck, numerous stab wounds on the abdomen and blunt force injuries to her face and forehead that caused numerous facial fractures. (RR3-87, 88, 89, 90, 91).

## SUMMARY OF STATE'S ARGUMENT

The photographs were not unfairly prejudicial but merely depicted the reality of the brutal and heinous crime admittedly committed by the Appellant and Rule 403 has no application. The photographs were admissible to show the circumstances of the commission of the crime at the punishment hearing before the trial court and without a jury. They also served to corroborate the eyewitness to the murder. Any prejudice created was not unfair as the evidence only illustrated the Appellant's own actions.

Even if the evidence had been unfairly prejudicial it did not substantially outweigh the probative value of the evidence.

Had the trial court erred in the admission of the photographs that error would have been harmless as not affecting the Appellant's substantial rights in view of his admission and the evidence of an extremely brutal murder.

# ARGUMENT AND AUTHORITIES

## *Issue on Appeal*

Did the trial court abuse its discretion in overruling the Appellant's objections to certain photographs on the grounds that they were unfairly prejudicial and that the probative value of that evidence was substantially outweighed by such prejudice?

## *Standard of Review*

A trial court's ruling upon the admissibility of evidence is reviewed under an abuse of discretion standard and the ruling will be upheld as long as it is within the zone of reasonable disagreement. *Weatherred v. State,* 15 S.W. 3d 540, 542 (Tx. Cr. App. 2000).

The admission of a photograph is within the sound discretion of the trial judge and generally a photograph is admissible if verbal testimony is admissible as to matters depicted in the photograph. If verbal testimony is relevant, photographs of the same are also relevant. *Gallo v. State,* 239 S.W.3d 757, 762 (Tx. Cr. App. 2007).

Rule 403 of the *Texas Rules of Evidence,* however allows the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. The Rule favors

admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo* at 762.

## *Application and Analysis*

### *The Photographs*

In this case the State offered photographs designated State's Exhibits 4 through 38. They were all taken at the scene of the crime. When the State offered State's Exhibits 7, 8, 9, 10, 11, 13, 14, 16, 20, 21, 22, 23, 24, 25, 31, 34, and 35 the Appellant objected to them because he alleged they were "unduly prejudicial" and their probative value was very limited. The trial court overruled the objection and admitted those exhibits. (RR3-52).

Later the State offered those photographs marked State's exhibits 4, 5, 6, 12, 15, 17, 18, 19, 26, 27, 28, 29, 30, 32, 33, and 36. As to those exhibits the Appellant had no objection and they were admitted. (RR3-105, 106).

On appeal the Appellant says he complains of the admission of State's Exhibits 4, 7, 8, 15, 16, 17, and 18 (Appellant's Brief at pg. 23), however, he then cites Exhibits 9, 13, 14, 25, 31, 34 and 35 as examples of what he characterizes as "grossly prejudicial" and does not include those he earlier stated were the basis of his appellate complaint.

The exhibits are set out in numerical order in RR4. State's Exhibit 4[1] is a photograph of the outside of the residence where the murder occurred. State's Exhibit 7 show the body behind the vacant house at a distance. Exhibit 8 is a closer view of the body as it was found. State's Exhibit 9 is a photograph showing the wounds on the face of Karen Edwards. Exhibit 13 and Exhibit 14 show blood on the sidewalk. Exhibit 15 is a close up of blood pooled on the walk. Exhibit 16 shows the sidewalk itself and 17 the back of the house and the porch. Exhibit 18 is a photograph of the back of a house. Exhibit 25 is a photograph of the sword lying on a table inside the house. Exhibit 31 appears to show part of the inside of the house. Exhibits 34 and 35 are photographs of the flashlight from different angles.

## Rule 403

Rule 403 requires the court to conduct a balancing test in which it must weigh the probative value of the evidence against the danger of unfair prejudice. The Appellant does not contest that the photographs were both relevant and probative in this case, but merely that they were unfairly prejudicial to the extent that the unfair prejudice substantially

---

[1] State's Exhibit 4 was offered and admitted without objection (RR3-105, 106) and therefore nothing is presented for review. Rule 33.1, *Texas Rules of Appellate Procedure*.

13

outweighed the probative value. The rule, however, requires a presumption that relevant evidence will be more probative than unfairly prejudicial. *Gallo* at 762.

### *Not Unfairly Prejudicial*

In this case the photographs admitted by the trial court over the Appellant's objection, were not unfairly prejudicial in the first place. All evidence is prejudicial to one party or other. What Rule 403 requires is a balancing between *unfair* prejudice and probative value and the rule is inapplicable where there is not a clear disparity between such prejudice and probative value. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tx. Cr. App. 2012). Evidence is *unfairly* prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, usually an emotional one. *Pawlak v. State,* 420 S.W.3d 807, 809 (Tx. Cr. App. 2013), *Montgomery v. State*, 810 S.W.2d 372, 389 (Tx. Cr. App. 1990) op. on reh'ng.

In this case it must be remembered that the photographs complained of were offered at a sentencing hearing conducted before the trial court, without a jury, subsequent to a plea of guilty. The judge was the fact finder and charged with the duty of making the decision as to punishment. The danger of unfair prejudice under Rule 403 is greatly

reduced when the judge is the trier of fact. *Ex Parte Twine*, 111 S.W.3d 664, 668(Tx. App. Ft. Worth 2nd Dist. 2003 rev. ref.); *Corley v. State*, 987 S.W.2d 615, 621 (Tx. App. Austin 3rd Dist. 1999 no pet.). There is nothing in the record to indicate or even imply that the trial judge was prejudiced by the admission of the photographs so as to make an emotionally charged or improper decision as to punishment.

The Appellant alleges that the photographs he cites were unfairly prejudicial because they were "gruesome". Three of the photographs he cites are State's Exhibits 7, 8, and 9. State's Exhibits 7 and 8 show the body of Karen Edwards where it was found. State's Exhibit 9 shows the wounds admittedly inflicted by the Appellant on her face. Exhibits 13, 14, and 15 show the blood trail on the sidewalk where her body was dragged. Other photographs show the flashlight and sword used to inflict the injuries. (Exhibits 25, 34, 35).

Undoubtedly these photographs prejudiced the Appellant, but was that effect unfair? In *Sonnier v. State*, 913 S.W.2d 511 (Tx. Cr. App. 1995) the defendant complained of the admission of photographs of the bodies of two victims in a bathtub full of bloody water with visible stab wounds as gruesome and claimed they should not have been admitted under Rule 403. The Court of Criminal Appeals, however, stated:

"The photographs are gruesome. That is to say they are disagreeable to look at, but they depict nothing more than the reality of a brutal crime committed. The photographs are powerful visual evidence, probative of various aspects of the State's theory of the offense, including the brutality and heinousness of the offense. The Appellant must realize that it is precisely the quality of which we describe as 'powerful' which gives rise to his arguments that the photographs are prejudicially inflammatory. But when the power of the visible evidence emanates from nothing more than what the defendant himself has done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome."

*Sonnier* at 519.

Similarly, in *Chamberlain v. State*, 998 S.W.2d 230 (Tx. Cr. App. 1999), the defendant complained of color photographs showing a close up of the victim face with brain matter extruded and other wounds. He claimed they were unfairly prejudicial and lacked probative value under Rule 403 because they merely depicted what was included in the oral testimony of the pathologist and were inflammatory. First of all, the Court of Criminal Appeals rejected the premise that visual evidence accompanying oral testimony was thereby rendered insignificantly probative. The Court noted that visual evidence that accompanies oral testimony often gives the fact finder a point of comparison against which to test the credibility of the witness. Moreover, the court did not

16

agree that the photographs were inflammatory, noting that "The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed. And it is precisely because they depict the reality of the offense that they are powerful visual evidence, probative of various aspects of the State's case. *Chamberlain* at 237.

In this case the only eye witness to the murder was Ms. Brown. She was admittedly very high on cocaine and alcohol. The photographs taken at the crime scene were corroborative of her testimony and, as in *Chamberlain*, allowed the court, as the trier of fact, to assess the credibility of the sole witness. They were all taken at the scene and were photographs of the victim, some of the weapons used in the murder, and of the premises where the crime took place. The photographs of Karen Edwards are unquestionably disagreeable to look at but they depict only what the Appellant admitted doing and the extreme brutality and heinousness of the crime. They may have prejudiced the Appellant but they were by no means unfair.

The Appellant relies heavily upon *Erazo v. State*, 144 S.W.3d 487 (Tx. Cr. App. 2004) and *Reese v. State*, 33 S.W.3d 238 (Tx. Cr. App. 2000). That reliance is misplaced. In *Erazo* the photograph in question was of a

fetus removed from the murder victim at autopsy. In finding a lack of probative value the Court held that the photograph did not illustrate the testimony "In contrast to a crime-scene photograph, which would assist the jury in visualizing the scene…". *Erazo* at 493. The Court of Criminal Appeals distinguished the photographs in that case from those where the photographs showed the wounds suffered by the victim or victims for whose death the defendants were on trial. *Erazo* at 494.

The photographs in this case fall precisely into those distinguished from the *Erazo* photographs. They were taken at the crime scene and assisted the trial court in visualizing that scene. They showed the wounds suffered by the victim alleged in the indictment and the weapons used. They were illustrative of the testimony of Latasha Brown and served to corroborate her testimony. That was crucial in light of her admittedly being heavily under the influence of cocaine at the time.

In *Reese* the photograph was of the victim and her unborn child lying in a casket. The fetus had been removed from her body after her death. The unborn child was not named as a victim in the indictment. *Reese* at 239. The Court of Criminal Appeals noted that the death of the fetus was not a fact of consequence related to an issue in dispute. *Reese*

at 242. The court held that the photograph that included the unborn child did not depict facts relevant to the fact finders determination of the case and that the photograph of a tiny, innocent, vulnerable unborn child suggested that the jury's decision would be made on an emotional basis. *Reese* at 242.

In this case the photographs were of the victim alleged in the indictment taken at the crime scene and of other aspects of that scene. They accurately reflected what had occurred and what was, by his own admission, caused by the Appellant. They corroborated the testimony of the sole witness to the crime and served as a comparison from which the court could determine her credibility. They were not taken, as those in *Reese*, with the intention to inflame the fact finder. The sentencing hearing was before the trial court without a jury. It is impossible to say that the judge was swept away improperly by emotions so as to make an improper decision in the case as a result of the photographs.

The photographs complained of in this case were all of the alleged victim and all taken at the scene of the crime. In *Jackson v. State*, No. AP-75,707, 2010 Tex. Crim. App. Unpub. LEXIS 30 (Tx. Cr. App. 2010), not designated for publication, the defendant attempted to rely upon both *Erazo* and *Reese* when contesting the admission of crime scene and

19

autopsy photographs under Rule 403. In affirming the admission of those photographs the Court of Criminal Appeals distinguished them from those in *Erazo* and *Reese* because they were photographs of the victim named in the indictment, whereas the photographs in those cases were not. The Court went on to note, "Although some of the photographs contained gruesome depictions of the victim's head injuries, these and other photographs simply reflected the brutality of the offense." *Jackson* op. pg. 2.

The photographs which the Appellant complains of in this case were properly admitted by the trial court. They were all of the crime scene and the victim named in the indictment. They merely reflected the extreme brutality of the offense committed by the Appellant and displayed only the results of his own actions. They served as a point of comparison from which the trial court, as fact finder, could judge the credibility of the admittedly impaired eye witness to the crime. Those photographs were not *unfairly* prejudicial to the Appellant. There is nothing to show that the trial court was improperly influenced by them so as to produce a purely emotional or irrational decision about the punishment assessed. Because there was no unfair prejudice from the evidence Rule 403 is inapplicable.

### Balancing Test

In conducting a balancing test as required by Rule 403 the following factors may be considered: (1) the probative value of the evidence; (2) the potential to impress the fact finder in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Montgomery,* supra. Even had the evidence had an element of unfair prejudice the probative value of the evidence would not have been substantially outweighed by that unfair prejudice.

### Probative Value of the Evidence

The Appellant concedes that the challenged photographs had probative value as to the extent of the injuries suffered by Karen Edwards and as to his own culpable mental state, however, he attempts to dismiss that value because of his plea of guilty. (Appellant's Brief at pg. 23). There was no plea bargain as to punishment. The offense of murder carries a wide range of punishment, from 5 years to 99 years or life. Sections 12.32 and 19.02, *Texas Penal Code.* Upon the Appellant's election it was the duty of the trial court to decide where, within that range, punishment for this offense should be assessed.

At a punishment hearing evidence may be offered as to any matter the court deems relevant to sentencing, specifically including the circumstances of the offense. Article 37.07(3), *Texas Code of Criminal Procedure.* Whether or not the sentencing hearing occurs after a plea of guilty or a contested trial that evidence is relevant and admissible on the question of punishment to be assessed.

The photographs in this case, taken of the victim at the crime scene and the scene itself, visually illustrated the circumstances of the commission of the offense. They also gave the trial court a basis for comparison allowing it to judge the credibility of the eye witness. They were of great probative value.

### Potential to Impress Fact Finder in Irrational and Indelible way

The Appellant argues that the photographs have a potential to impress the fact finder in an irrational and indelible way due to their depiction of the body of the victim at the crime scene, the place where the murder occurred and the blood on the sidewalk where he dragged her. He also says that the photographs of the flashlight and sword used by him in the murder had such a potential.

The Appellant says that these photographs "appealed to the trial judge's emotions and encouraged her to make her punishment decision

on an emotional basis without regard to the probative force of the evidence." (Appellant's Brief at pg. 26). The record does not support that speculation. The court uttered not one word indicating it was sentencing the Appellant because the photographs inflamed emotion that overcame its ability to make a rational decision based on the evidence. This was the trial court, not a jury, making the decision and the danger of such an emotional decision based upon unfairly prejudicial evidence is greatly reduced under those circumstances. *Ex Parte Twine* at 668.

Contrary to the Appellant's theory, the mere nature of the photographs as gruesome is insufficient to show the required potential to unfairly prejudice the trial court. They merely reflected the disagreeable realities of the brutal crime the Appellant committed and which the trial court properly considered in making the punishment decision. They were not inflammatory and nothing indicates the trial court was inflamed by them. *Chamberlain* at 237. The evidence of an extremely brutal crime certainly logically explains the assessment of a life sentence and it cannot be said that such a decision resulted from an improper emotional basis as a result of the photographs as opposed to all of the evidence regarding the circumstances of the murder.

### *Time Needed to Develop Evidence*

The Appellant concedes that the State did not use an inordinate amount of time during the hearing to the admission of the photographs. (Appellant's Brief at pg. 26).

### *State's Need for the Evidence*

The Appellant begins by stating that the State's need for the photographs as evidence was to show his culpable mental state and the extent of the victim's injuries, ignoring any other need for the evidence. He then argues that these were not at issue because of his plea of guilty. This is incorrect.

The issue before the trial court was the punishment to be assessed for the offense the Appellant committed. The circumstances of that offense were admissible and vital so that the judge could make a decision on that issue. The fact that he entered a plea of guilty had no effect upon the duty of the court, nor did it render evidence of the circumstances of the offense inadmissible or improper. Article 37.07(3), *Texas Code of Criminal Procedure.* By his plea the Appellant admitted that he intentionally and knowingly murdered Karen Edwards by shooting her with a gun and cutting and stabbing her with a knife. His admission did not include the circumstances of the commission of that

offense. Those circumstances were not only highly relevant to the decision of the trial court, but were necessary to make a rational decision on that issue and were admissible on punishment by statute. It is illogical and self-serving to suggest that the trial court as fact finder on punishment should be unable to learn of the circumstances of the offense in assessing punishment beyond the admitted elements of the offense set out in the indictment. Clearly Ms. Brown's testimony was admissible at the sentencing hearing and the photographs were visual representations of that testimony. The State had both a duty and a need to provide that evidence to the court so that it could determine the punishment to be assessed.

### *Balancing*

The photographs had great probative value as to the circumstances of the commission of the offense going to the issue of the proper assessment of punishment. They were of probative value in the assessment by the trial court of the credibility of Ms. Brown, the eye witness to the murder, and as to the circumstances of the crime committed. The Appellant's conclusion that they "doubtless" had an emotional impact on the experienced trial judge is without any basis in fact or the record. His view seems to be that because the photographs

prejudiced him by showing the results of his own actions that prejudice must have thus been unfair. Those photographs were properly before the trial court and could be considered in assessing punishment and it was not at all unfair to allow the court to know what the Appellant had done.

The Appellant's plea of guilty to the offense charged in the indictment, contrary to his assertion, has no effect upon the admissibility or the probative value of the evidence of the circumstances of the offense as bearing on the punishment to be assessed. There need not have been a contested issue on the extent of Edward's injuries nor the Appellant's culpable mental state in order to make the evidence of the circumstances of the offense probative on punishment. The Appellant's plea of guilty without a plea bargain is what put the issue of proper punishment before the court and rendered the evidence as to the circumstances of the offense probative and fair.

The State's need for the evidence is not restricted to the Appellant's incorrect representation of the basis for that need. Even with the offense admitted by him, the State still "needed" to present the circumstances of the offense to the court for consideration as to punishment to be assessed. It did not need for culpability or the extent

26

of the injuries to the victim to be contested in order to do so. The photographs were visual evidence accompanying the oral testimony of Ms. Brown and were not cumulative, *Chamberlain* at 237, and their evidentiary power emanated from nothing more than what the Appellant had done. *Sonnier* at 519. The need for that evidence in order to provide the trial court with a rational basis for the assessment of punishment was great.

The essence of the Appellant's complaint is that, in his view the pictures are gruesome and, therefore, their probative value is substantially outweighed by the danger of unfair prejudice and that the fact that he pled guilty and Ms. Brown testified to the matters contained in the photograph rendered them unnecessary and irrelevant.

In *Jean v. State*, No. AP-76,601, 2013 Tex. Crim. App. Unpub. LEXIS 785 (Tx. Cr. App. 2013), not designated for publication, the Court of Criminal Appeals, in affirming the decision of the trial court to admit photographs of the victim taken at the crime scene over a Rule 403 objection stated:

> "Photographs depicting the location of the body and
> the victim's injuries are relevant. And even if photographs
> are gruesome, under Rule 403 their probative value
> are not substantially outweighed by the danger of unfair

prejudice if they 'are no more gruesome than the crime scene itself as it was found by the police.' Likewise, under Rule 403, photographs of a victim's injuries are admissible if they show 'only the injuries that the victim received and are no more gruesome than would be expected.' Moreover, the fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction."

*Jean*, Op. at pg. 5.

That is precisely the situation in this case and the probative value of these photographs is, likewise, not substantially outweighed by the danger of unfair prejudice.

In the end all of the factors, taken individually and together, support the admission of the complained of photographs over the Appellant's Rule 403 objection and the trial court did not abuse its discretion in doing so.

***Harmless***

Non-constitutional error that does not affect substantial rights must be disregarded. Rule 44.2(b), *Texas Rules of Appellate Procedure.* In this case the trial court did not err in admitting the photographs. Had that not been the case, however, in light of the Appellant's plea of guilty to the allegations in the murder and Latasha Brown's testimony that the Appellant, her close friend, shot Karen Edwards four times, twice in the

28

head, over a period of more than an hour (RR3-39) and then when she would not stop breathing beat her in the face with a flashlight, stepped on her neck, cut her on the neck and then hacked her with a sword, before dragging her body by the ankles across the street and dumping it behind a vacant house, it could not be said that the photographs affected the Appellant's substantial rights.

The testimony coupled with the Appellant's judicial confession established an extremely brutal and heinous murder. Whatever gruesomeness that may be found in the photographs consisted of a visual representation of Brown's testimony as to the circumstances of the offense. The Appellant never contested the admissibility of that testimony. The State respectfully submits that it cannot be reasonably concluded that the outcome of the punishment hearing would have been different had the trial court excluded the photographs. Had the trial court erred the error would have clearly been harmless.

# PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 5,110 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, E. Alan Bennett, Counsel for Appellant, by electronic transfer via Email, addressed to him at abennett@slmpc.com on this 28th day of <u>August</u>, <u>2015</u>.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney