

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SCOTT ANTHONY HETRICK, | § | No. 08-23-00094-CR |
| Appellant, | § | Appeal from the |
| v. | § | 91st Judicial District Court |
| THE STATE OF TEXAS, | § | of Eastland County, Texas |
| Appellee. | § | (TC# 25317) |

## **MEMORANDUM OPINION**

Appellant Scott Anthony Hetrick was charged by two separate indictments with sexual assaults and continuous sexual abuse of his stepdaughter, B.C.[1] One indictment charged Appellant with one count of continuous sexual abuse of a child. TEX. PENAL CODE ANN. § 21.02(b). The other indictment charged him with three counts of sexual assault of a child. *Id*. § 22.011(a)(2). The cases were consolidated for trial, and the jury found Appellant guilty on all counts. The jury assessed punishment at 50 years' imprisonment for the continuous-sexual-abuse count and 20 years' imprisonment for each of the three sexual-assault counts. It also assessed a $10,000 fine for each count. The trial court imposed punishment, ordering that the sentences run concurrently.

Appellant challenges the trial court's judgments in two separate appeals, docketed in this Court as appellate cause numbers 08-23-00093-CR (three counts of sexual assault of a child) and

---

[1] We protect the identities of the children involved in this case by referring to them by initials.

08-23-00094-CR (one count of continuous sexual abuse of a child). We address each separately in companion cases. This appeal addresses appellate cause number 08-23-00094-CR.[2] In each appeal, Appellant raises the same three issues and relies on the same briefing, contending the erroneous admission of testimony commenting on his and B.C.'s credibility requires reversal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The events leading to Appellant's convictions came to light in October 2018 when B.C., then 15 years old, confided her fear of being pregnant to her best friend and high school classmate, H.P. B.C. told H.P. Appellant had raped her three or four weeks earlier. B.C. testified that she was afraid to tell her mom because they relied on Appellant to pay the bills, and if he went to jail, there would be no one to pay the bills since her mom was going to school. She asked H.P. to get her a pregnancy test. H.P. obtained a pregnancy test for B.C. and brought it to her at school. B.C. told her other good friend and classmate, A.C., she was going to take the pregnancy test. But because A.C. was "good friends" with B.C.'s mom and Appellant "and everybody," B.C. did not want to tell A.C. about Appellant raping her. Instead, B.C. told A.C. there was a boy from another town. A.C. did not believe her, and B.C. eventually revealed to her that she had been raped by Appellant.

B.C. disclosed the rape to more of her friends and classmates in the subsequent days, asking that they not tell anyone. But some of these friends and classmates reported the rape to the high school counselor. After speaking briefly to B.C. on October 24, 2018, the counselor alerted the authorities.

---

[2] This case was transferred from the Eleventh Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Eleventh Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

On that day, B.C.'s mother drove B.C. to the crisis advocacy center to be interviewed and then accompanied her to the hospital to be examined. At the hospital, B.C. was examined by Erica Gooding, a sexual assault nurse examiner (SANE). During the nonacute forensic examination, B.C. related to Gooding that Appellant had raped her weeks before and had also sexually abused her since she was about nine years old. Gooding memorialized the findings of her forensic examination in a SANE report.

In the meantime, Eastland Police Chief David Hullum interviewed Appellant at the behest of Gorman Police Chief Steve Anderson. Anderson had requested Hullum's assistance because of Hullum's extensive training and experience in investigating sexually based offenses and interviewing suspects. During the interview, which was recorded on video, Hullum accused Appellant of being deceptive when denying B.C.'s allegations.

Appellant was indicted in 2019, and the consolidated trial commenced in March 2023. At trial, the State presented three witnesses during the guilt/innocence phase: Hullum, Gooding, and B.C.

When Hullum testified at trial, he was the recently elected Eastland County Judge. After the State established that Hullum was a highly experienced and highly trained sexual-assault investigator, the videorecording of Appellant's police interview was admitted and played for the jury. The interview and Hullum's thoughts on it were the subject of the remainder of Hullum's testimony on direct, cross, redirect, and recross examinations. On cross-examination, defense counsel broached the subject of deceptiveness, asking Hullum if breaking eye contact meant that the person was being deceptive. Hullum responded that breaking eye contact was indicative of deception but did not mean anything by itself. After cross-examination concluded, the State argued at a bench conference outside the jury's presence that defense counsel had "opened the door" to the issue of Appellant's deceptiveness. The trial court agreed. When redirect examination began,

3

the State asked Hullum to opine on whether he believed Appellant had been deceptive in denying B.C.'s allegations. Over objection, Hullum testified that he believed Appellant had been deceptive, mirroring, in part, his comments to Appellant directly on the videorecording, addressing eye-contact along with other indications of deception.

Gooding took the witness stand next. During direct examination, the SANE report was admitted into evidence without objection, though it would not be published to the jury until B.C. testified. Testifying from the report, Gooding related the detailed sexual assault and abuse allegations made by B.C. After relating this information, Gooding was asked to testify about her impressions of B.C. Gooding described B.C. as shy and embarrassed but "a very good historian." The State then asked Gooding if she believed B.C. had fabricated the allegations. Over objection, Gooding testified that she believed B.C. was being truthful. Further testifying from the report, when asked about there being no injury noted to B.C.'s cervix, vagina, and anus, Gooding explained it was common not to see injuries to those areas in post-pubescent girls because of estrogenization. She indicated that they see injuries in less than 5% of rape victims after 72 hours after a rape. At the conclusion of direct testimony, Gooding was again asked if she had any concern that B.C.'s story was fabricated. Defense counsel did not object, and Gooding answered she did not.

B.C., 19 years old at the time of trial, was the State's last witness. Soon after taking the stand, B.C. identified 13 photographs of her at various ages. These photographs were admitted into evidence without objection. Then, in testimony spanning more than 50 pages of the reporter's record, B.C. recounted in great detail the countless sexual assaults Appellant committed against her, ending with the rape when she was 15 years of age. B.C. described a multitude of sexual assaults increasing in frequency and invasiveness over time prior to the rape at age 15. For instance, B.C. explained that Appellant's actions went from: (a) playing games with her where he would

4

touch her "upper chest" and her "bottom" and have her kneel down while he tried to shoot semen into her mouth when she was 4 or 5 years old; to (b) waking up to Appellant's penis in her mouth while he was holding her head until he ejaculated into her mouth when she was 7 years old; to (c) in addition to putting his penis in her mouth, touching and licking her upper chest and private parts, rubbing her genital area, and inserting his fingers inside of her vagina at least twice per week beginning when she was 9 or 10 years old and continuing until she was 13 or 14.

B.C. described how Appellant vaginally and anally raped her shortly after her fifteenth birthday. One afternoon while they were alone at home watching a movie on a mattress in the living room, in a struggle lasting 30 to 40 minutes, Appellant groped her, succeeded in pulling down her pants, and, despite B.C. crying, screaming, telling him no, and trying to fight him off, Appellant inserted his penis into her vagina and subsequently into her anus while she was on her stomach. B.C. explained that she bled from her anus for approximately one week thereafter.

During direct and cross-examination, B.C. denied fabricating the allegations and explained that she did not disclose the abuse and assaults to anyone over time for various reasons, including because, having grown up with it, she thought it was ordinary behavior; she was afraid of Appellant and his threats; and she feared disclosure would ruin the family.

Appellant testified at trial; he presented no evidence or other witnesses. On both direct and redirect examination, he denied sexually abusing and assaulting B.C.

During its deliberations, the jury asked the Court for copies of the SANE report and the videorecording of Appellant's police interview. The videorecording was played for the jury in the courtroom.

## ISSUES ON APPEAL

On appeal, Appellant raises three issues—the first two allege that the trial court erred in admitting opinion testimony and the third concerns cumulative error.

## OPINION TESTIMONY

In his first issue, Appellant asserts Hullum should not have been permitted to testify to his belief that Appellant was lying about sexually assaulting B.C. In his second issue, he asserts Gooding should not have been permitted to testify to her impression that B.C. was truthful about her allegations of sexual abuse and assault. Responding to both issues, the State counters that Appellant has failed to prove the trial court committed reversible error in admitting the testimony of Hullum and Gooding on Appellant's credibility. We agree with the State.

### A. Standard of review and applicable law

We review the trial court's decision to admit evidence under an abuse-of-discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* A trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

A witness, expert or lay, may not directly opine on a particular witness's truthfulness or on a criminal defendant's guilt or innocence because those determinations are made by the trier of fact. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (en banc); *Yount v. State*, 872 S.W.2d 706, 709–11 (Tex. Crim. App. 1993) (en banc); *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974); TEX. R. EVID. 608, 702. But evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence, so long as the response to the invitation does not exceed its scope. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App.

6

2009); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) *cert. denied*, 560 U.S. 966 (2010); *Schutz*, 957 S.W.2d at 71. A defendant opens the door and invites the State to reply when the defendant broaches a subject ordinarily outside the realm of proper comment by the State. *Prince v. State*, 574 S.W.3d 561, 572 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). Under such a scenario, the defendant cannot complain when the subject broached by the defendant is then pursued by the State. *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Heidelberg v. State*, 36 S.W.3d 668, 672 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

To complain on appeal about allegedly inadmissible evidence, a party must timely object, either before or at the time evidence is admitted. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (en banc); Tex. R. App. P. 33.1(a)(1). In addition, a party must object each time the allegedly inadmissible evidence is offered at trial or obtain a running objection. *Valle*, 109 S.W.3d at 509; *Ethington*, 819 S.W.2d at 858. The failure to object properly results in waiver. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc). Furthermore, a party may not complain on appeal about improperly admitted evidence if the same or similar evidence is admitted without objection at another point in the trial, either before or after the admission of the disputed evidence. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc).

### B. Appellant cannot complain on appeal about the admission of Gooding's testimony on B.C.'s truthfulness.

We begin with Appellant's second issue. He contends the trial court erred by permitting Gooding to testify to her impression that B.C. was truthful about the facts in their interview because this testimony constituted an impermissible opinion on an ultimate issue in the case. In support of his contention, Appellant directs our attention to the following exchange on direct examination:

> Q. [The State]: Okay. During your exam of her, did you develop any impressions or additional information about [B.C.] herself?

A. Her general appearance, she was shy. She would be -- she was wringing her hands when she was giving her history. She was looking down as though she was embarrassed. But she was a very good historian. She was able to take her time and account details and relay them to me in the history.

Q. Based on your interview with her, was it your impression that this was something that she had rehearsed or made up? Or what was your impression seeing her recount this?

[Defense Counsel]: Object to any speculation about credibility, Your Honor. Again, the same objection under Rule 702. There's no proper predicate laid for one witness to pass on the credibility of any other witness. I would object, there's no foundation and it's an improper subject for speculation.

THE COURT: Overruled.

Q. [The State]: Go ahead, ma'am.

A. She was a very good historian. I had no reason to disbelieve her story. Although, like, my job is just to gather facts and record facts only. I didn't get that impression from [B.C.].

Q. What impression did you get?

A. That she --

[Defense Counsel]: Same objection. I need to renew my objection just to make the record clear, Your Honor.

THE COURT: Overruled.

A. That she was giving me the true facts of what happened to her years ago from when she was 9 until the current age when she was 15.

Although defense counsel objected to the admissibility of Gooding's testimony on B.C.'s truthfulness during this exchange, he failed to object to the admission of Gooding's opinion on the same subject later during her testimony. The failure to object occurred at the conclusion of Gooding's direct examination when the State again broached the subject of B.C.'s truthfulness:

Q. [The State]: And there was nothing during your observations or information that was relayed to you by [B.C.] to give you concern that this may be a fabricated story?

A.   No, sir.

Appellant neither lodged a running objection to Gooding's testimony on B.C.'s truthfulness nor objected to the admission of this testimony every time it was proffered at trial. By failing to object to the admission of Gooding's testimony on B.C.'s truthfulness when the State proffered it for the second time, Appellant waived error. *See Valle*, 109 S.W.3d at 509–10 (concluding error was waived because appellant failed to object when witness testified the second time that he was fearful for his life). Consequently, Appellant cannot complain on appeal about the admission of Gooding's testimony on B.C.'s truthfulness.

Accordingly, we overrule Appellant's second issue.

### C.   The trial court did not err in admitting Hullum's testimony regarding whether Appellant was lying.

Turning to his first issue, Appellant asserts the trial court erred by permitting Hullum to testify that he believed Appellant was lying when he denied B.C.'s sexual assault allegations because this testimony constituted an impermissible opinion on an ultimate issue in the case. In support of his assertion, Appellant directs our attention to the following exchange on redirect examination:

> Q.   [The State]: Judge Hullum, while ago the defense attorney asked you whether or not you believed based upon the body language of his client whether he was being deceptive. What's your opinion about that?

> [Defense Counsel]:   May I renew my objection under Rule 702 that the witness -- there's no proper predicate laid that he is clairvoyant or is able to determine what might or might not mean by nonverbal communication, expressions, blinks, or any other manipulation of their face or body.

> [The State]:   Did I misunderstand your ruling, Your Honor?

> THE COURT:   No, ma'am. Objection is overruled.

> [The State]:   Thank you.

> Q.   [The State]: Go ahead. You may answer that.

9

A.   I believed he was deceptive.

Q.   [The State]: And as a matter of fact, when he broke eye contact with you, what's your opinion as to whether he was being deceptive or truthful?

A.   That, combined with everything else that was going on, I believe he was deceptive.

Q.   [The State]: And his response to your questions, do you believe that was deceptive or truthful when you're asking him the hot-point questions?

A.   He was being deceptive.

.     .     .

Q.   [The State]: So based upon your experience, your knowledge, the cases you've had, in interviewing this defendant, do you have an opinion as to whether he was deceptive with you on whether or not he raped his stepdaughter and sexually assaulted her as a child?

[Defense Counsel]:   And I renew my objection for the basis that I've stated, no proper predicate under Rule 702 that he is clairvoyant or can determine that matter, and would renew my objection for the record.

THE COURT:   Overruled.

A.   I believe he was deceptive for all of those reasons.

Although defense counsel objected to the admissibility of Hullum's testimony on Appellant's truthfulness at this point on redirect examination, he had broached the same subject earlier on cross-examination. As the State alluded to in its first question in the above exchange, defense counsel deliberately asked Hullum about the significance of eye contact in determining deception while cross-examining him. This line of questioning ensued immediately after Hullum agreed with defense counsel that Appellant had not admitted any wrongdoing to him:

Q.   [Defense Counsel]: Now, it's really impossible to tell what somebody's eye movements or eye jerks or anything else might mean; isn't that true?

A.   No.

Q.   [Defense Counsel]: You believe that you can tell?

10

A. I can.

Q. [Defense Counsel]: Okay.

A. The majority of the time, yes.

Q. [Defense Counsel]: Well, let's talk about that since some of it's in. If a person breaks eye contact with you, does that mean they're being deceptive?

A. Not on its own, no.

Q. [Defense Counsel]: Well, if a person looks away from you when you're questioning them, does that -- what conclusion does that lead you to arrive at?

A. That's just one indicator. It doesn't mean anything on its own.

After defense counsel finished his cross-examination of Hullum, the following discussion about whether defense counsel had opened the door to the issue of Appellant's credibility occurred at a bench conference outside of the jury's presence:

[The State]: When he asked him the question, you can't really tell if he's deceptive because of his body language, he answered on that. He can no longer object to redirect on that.

[The State]: The specific questions that were asked in regard to being deceptive, eye contact --

[Defense Counsel]: I dispute that, Your Honor. I was trying to keep it all out. And I objected to every one of them under Rule 702. And that it's speculation -- and it's not going to help you that much, but anyway, it's rank speculation and -- rank speculation of what might be meant from eye blinking or body movements or --

[The State]: He can't ask him that and keep out that, that he's being deceptive, he was asking him, but I believe he opened the door.

[Defense Counsel]: It's all been asked and answered.

THE COURT: You may proceed.

[The State]: Thank you.

11

Appellant contends defense counsel's questioning did not open the door to a general inquiry about Hullum's opinion of his truthfulness. He argues the State was precluded from exploring the issue of his deceptiveness during redirect examination because defense counsel's line of questioning was limited to the issue of eye contact in determining deception. Appellant is not arguing that the door had not been opened at all but rather that the door had been partially opened to testimony about eye contact in relation to deception but not completely opened to testimony about his deceptiveness. Appellant cites no authority in support of his argument. But more importantly, as disclosed by the colloquies recited above, the record belies Appellant's argument.

Appellant opened the door to the admission of otherwise inadmissible opinion testimony about his guilt by broaching, on cross-examination, the same subject when questioning Hullum. By deliberately asking Hullum about deceptiveness, Appellant invited the State to respond to the subject. The questioning pursued by the State on redirect examination did not exceed the scope of Appellant's invitation. The State's questioning was limited to the same subject raised by Appellant: the indicators of his deceptiveness during the police interview. Because the State again pursued the subject of deceptiveness after Appellant broached it, he cannot complain about the admissibility of Hullum's testimony on this subject. Under these circumstances, we cannot conclude that the trial court's decision to admit Hullum's testimony regarding his belief about Appellant's truthfulness lies outside the zone of reasonable disagreement. *See Williams*, 301 S.W.3d at 687 (assuming evidence of extraneous murders was inadmissible under rule 404(b), but concluding trial court did not abuse its discretion by admitting testimony about extraneous offenses when defense counsel "opened the door" by questioning witness about extraneous offenses).

There is also another basis for concluding the trial court did not abuse its discretion by admitting Hullum's testimony on Appellant's guilt. The State points out that similar evidence had

been previously admitted without objection in the videorecording of Appellant's police interview at the beginning of Appellant's testimony and before the colloquies identified above.[3] The videorecording was played for the jury. From approximately the 25-minute mark to after the 31-minute mark in the videorecording, Hullum informs Appellant repeatedly that he does not believe Appellant's denials because Appellant's body expressions, eye movements, and facial expressions indicate deceptiveness. In fact, during this portion of the videorecording, Hullum tells Appellant, "right now, I don't have a warm and fuzzy feeling about you telling me the truth about some of this stuff . . . cause you can keep doing it and I am going to keep calling your hand on it." When Appellant asks Hullum, "doing what?", Hullum responds, "those micro expressions that I got through talking about." Hullum continues, telling Appellant, "so let's get to that point of why you're having those micro expressions that are indicative of you being deceptive when I ask you have you touched her inappropriately." Hullum's opinion of Appellant's deceptiveness, as expressed in the videorecording, had already been admitted into evidence without objection and heard by the jury by the time Hullum testified about the same subject on the witness stand. Given these circumstances, Appellant's complaint about improperly admitted testimony is unpersuasive. *See Leday*, 983 S.W.2d at 717–18 (recognizing requirement that objection be made "every time the objectionable evidence is offered"; "overruling an objection to evidence will not result in

---

[3] On the first day of trial on the merits but before trial commenced, and outside the presence of the jury, defense counsel objected to the admission of the videorecording on two grounds, not including the ground at issue on appeal. First, defense counsel asserted that Appellant had invoked his Fifth Amendment rights to remain silent and to counsel. After viewing the relevant portion of the videorecording, the trial court considered the parties' arguments. Defense counsel argued that Appellant's inquiry whether he would be responsible for paying for an attorney if he were required to obtain one was an invocation of Appellant's right to counsel. After viewing the relevant portion of the videorecording again, the trial court overruled defense counsel's objection. Second, defense counsel contended that the videorecording was inadmissible hearsay. The State responded that the videorecording was admissible as a statement made by Appellant. The trial court overruled defense counsel's objection. Defense counsel raised no objection when the State sought admission of the videorecording during Hullum's testimony. Appellant has raised no objection on appeal to the admission of the videorecording. Because defense counsel and the State had previously agreed to mute only the discussions about polygraph testing, the videorecording was played in that manner at trial and during the jury's deliberations.

reversal when other such evidence was received without objection, either before or after the complained-of ruling"). We cannot say the trial court abused its discretion regarding its decision to allow the portion of Hullum's testimony Appellant complains of.

Accordingly, we overrule Appellant's first issue.

**D.  Regardless, the record does not establish harm from the admission of Hullum's testimony on Appellant's deceptiveness and Gooding's testimony on B.C.'s truthfulness.**

Even if we were to conclude the trial court erred when it admitted the challenged testimony, we have fair assurance that it did not have a substantial and injurious effect on the jury's verdict. In contending he was harmed by the opinion testimony of Hullum and Gooding, Appellant maintains their testimony was the most important to the jury, as evidenced by its request during its deliberation to review the video recording of the interview and the SANE report. He further asserts their opinion testimony would have certainly influenced the jury's credibility determination because of their expertise.

The erroneous admission of testimony is harmful only if it affects an appellant's substantial rights. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023); TEX. R. APP. P. 44.2(b). An error affects an appellant's substantial rights if it has a substantial and injurious effect or influence in determining the jury's verdict. *Cook*, 665 S.W.3d at 599. In assessing whether an error meets this threshold, we review the entire record and consider the following non-exclusive factors: "the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and relevant voir dire." *Id*. We will not overturn a conviction if we have fair assurance that the error did not affect an appellant's substantial rights. *Id.*

14

The nature of the evidence supporting the verdict consists of the testimony of the three State's witnesses, and multiple exhibits, including the SANE report and the videorecording of Appellant's police interview. The SANE report reflected no physical trauma. Consequently, given the absence of any physical evidence or eyewitness testimony corroborating B.C.'s allegations, the outcome of these cases hinged on the credibility of Appellant and B.C. *See Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently `he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). And their credibility was at issue throughout trial, from opening arguments to closing arguments. In this respect, Hullum's and Gooding's opinion testimonies on Appellant's and B.C.'s credibility was not innocuous. This testimony undermined Appellant's credibility and bolstered B.C.'s, and the State drew the jurors' attention to this testimony in closing arguments. Yet, the State's emphasis on this testimony during closing argument was minimal. In a passage consisting of less than one page of the reporter's record, the State reminded the jurors that Gooding knew B.C. was telling the truth and Hullum knew Appellant was lying. *See Coble v. State*, 330 S.W.3d 253, 287 (Tex. Crim. App. 2010) (holding that improperly admitted expert testimony was harmless in part because the State "barely mentioned" the expert during closing argument and did not emphasize his opinions).

Furthermore, the jury heard the same or substantially similar testimony elsewhere admitted without objection. The jurors heard Gooding's opinion of B.C.'s truthfulness at the conclusion of her direct examination. The jurors watched the videorecording of Appellant's police interview twice. They observed Appellant for themselves and heard Hullum accuse Appellant of being deceptive and explain to Appellant the basis for his accusations. They were able to make an independent determination of Appellant's credibility and demeanor during the interview. The

jurors also heard testimony about Appellant's deceptiveness when, on cross-examination, defense counsel asked Hullum to explain the significance of breaking eye contact in determining deceit. *See Cook*, 665 S.W.3d at 600–01 (holding that a police officer's testimony on the victim's credibility was harmless in part because additional lay testimony on the victim's credibility was admitted on rebuttal without objection).

Perhaps the most significant factor weighing against reversible harm is the fact that the jurors heard from B.C. and Appellant themselves. And the jurors were reminded, over and over—in voir dire, in opening arguments, in closing arguments, and in the trial court's charges—that they were the sole judge of witness credibility and the weight to give witness testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). As the sole fact-finder, the jury may credit the witnesses it chooses, disbelieve any or all the evidence or testimony proffered, and weigh the evidence as it sees fit. *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Here, B.C.'s uncorroborated testimony standing alone is sufficient to support Appellant's convictions. *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd) ("The uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense."). The jury did not need any other evidence to convict Appellant. *Id.* To the extent that there are any inconsistencies in B.C.'s testimony or conflicting evidence in the record, it was the jury's duty as the sole fact-finder to assess B.C.'s credibility and to resolve any conflicts in the evidence or her testimony. *Merritt*, 368 S.W.3d at 527. At trial, Appellant fully confronted B.C., challenging her memories and version of events, expressing incredulity and asking her outright if she had fabricated the allegations. In testimony spanning over 50 pages of the reporter's record, B.C. was consistent and coherent in testifying about the elemental facts supporting the sexual assault and abuse charges, and she was adamant that she was telling the truth. Based on its

verdict, the jury was not persuaded by Appellant's arguments, and found B.C.'s testimony to be credible.

The entire record does not establish that the testimony of Hullum and Gooding commenting on the credibility of Appellant and B.C. affected Appellant's substantial rights. The jury considered the same or substantially similar testimony admitted elsewhere without objection; the parties, court, and jury charge instructed the jurors that they were the sole judge of the credibility of the witnesses and the weight to be given to their testimony; the jury heard from Appellant himself; and the jury heard B.C. provide a detailed account of Appellant's sexual assault and abuse of her, during which she was fully cross-examined. Given these circumstances, we cannot conclude that the challenged testimony so influenced the jurors that they could not, and would not, have convicted Appellant had they not heard it.

## CUMULATIVE ERROR

In his third issue, Appellant invokes the cumulative-error doctrine. He contends the errors he alleged in his first two issues constitute cumulative error requiring reversal of the trial court's judgment.

The cumulative effect of multiple errors at trial may result in harmful error even if each individual error is deemed harmless. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (en banc), *cert. denied*, 528 U.S. 1082 (2000); *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of pet.). This doctrine is an independent ground for relief. *Linney*, 413 S.W.3d at 767. To prevail on this ground, an appellant must establish that multiple errors "synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict." *Id*. (internal quotation marks omitted).

Appellant, relying in essence on the same arguments raised in his briefing on his first two issues, has failed to establish his entitlement to relief based on the cumulative-error doctrine. His contentions fail for a simple reason: he has not proved error. Non-errors, even when aggregated, do not result in cumulative error or harm. *Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016); *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Chamberlain*, 998 S.W.2d at 238). Additionally, as explained above, even if Appellant had proven that the trial court abused its discretion in admitting the testimony at issue, we have fair assurance that it did not have a substantial and injurious effect on the jury's verdict.

Accordingly, we overrule Appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

LISA J. SOTO, Justice

November 30, 2023

Before Palafox, and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment

(Do Not Publish)